[No. 13765. Department Two. — January 5, 1891.]

EZRA CARPENTER, RESPONDENT, *v.* A. R. HATHAWAY, APPELLANT.

CONTRACTS — ORAL AGREEMENT — SUBSEQUENT MEMORANDUM — MERGER. — Where an oral agreement has been made and partially performed, a writing subsequently given as a mere acknowledgment or memorandum thereof, and containing nothing inconsistent therewith, does not operate to merge or supersede an express provision of the oral agreement not included in terms in the memorandum.

ID. — PARTNERSHIP IN LANDS — TIME FOR DIVISION OF PROFITS. — An oral agreement for a partnership in the purchase and sale of lands to be acquired and sold in the name of one partner, with an express provision that the net proceeds of each sale were to be equally divided immediately after the sale, is not merged or superseded as to such provision by a subsequent memorandum, made after certain lands were acquired under it, which consisted of a mere written acknowledgment by the partner who

had acquired the title to the land, that he had acquired it, and that it was understood and agreed that the other partner was to share equally in the net profits of the land, without stating the time of division.

ID. — REFUSAL TO ACCOUNT — ACTION FOR DISSOLUTION AND ACCOUNTING — MATURITY OF CAUSE OF ACTION. — Upon the refusal of the partner holding the legal title to account after a sale by him of part of the partnership lands, an action will lie in favor of the other copartner for a dissolution of the partnership and an accounting of the profits of the land sold, and to establish his interest in all the unsold lands acquired under the verbal agreement.

PARTNERSHIP — ACCOUNTING — PURCHASE OF LAND — INTEREST. — Interest, if not stipulated for in the partnership agreement, cannot be allowed on the purchase-money of the lands bought for the partnership.

ID. — TAXES AND EXPENSES — APPEAL — OBJECTIONS FOR FIRST TIME. — It cannot be objected upon appeal that no allowance was made to the defendant for taxes and necessary expenses incurred in reference to the lands, the net profits of which were to be divided, if no evidence of taxes or expenses was offered nor claim made therefor at the trial.

ID. — DECREE ESTABLISHING INTEREST IN LANDS — FUTURE TAXES — TAXATION. — No provision for future taxes need be made in a decree establishing the plaintiff's interest in the partnership lands, the legal title of which was in the defendant, as the plaintiff's interest is taxable to himself alone, and not to the defendant, after the date of the decree.

APPEAL from a judgment of the Superior Court of San Luis Obispo County, and from an order denying a new trial.

The facts are stated in the opinion.

*William Shipsey,* for Appellant.

*W. B. Dillard,* for Respondent.

GIBSON, C. — Plaintiff brought this action to dissolve a partnership, for an accounting, and to establish his interest in certain lands acquired as partners, and obtained a judgment in his favor. Defendant appeals from the judgment, also from an order denying him a new trial.

The main facts, as shown by the findings, may be briefly stated as follows: —

About November 15, 1885, the plaintiff, who was then county surveyor of San Luis Obispo County, had special knowledge of the location and quality of certain large

tracts of vacant government land on the Carisa plains in that county, then offered at private sale for $1.25 per acre, but he was without means to purchase any of the land.

On or about that date he and the defendant, who was possessed of both means and credit, entered into a verbal agreement whereby the plaintiff, upon his part, agreed to assist in pointing out, locating, and entering in the name of the defendant such portions of the lands as the latter might deem it advisable to purchase for their joint benefit; and the defendant, upon his part, agreed, in consideration thereof, to furnish a team and wagon for the inspection of the lands, to purchase the lands of the government, and furnish the necessary money therefor, and when so purchased, to take charge of and sell the same for cash, at a reasonable profit, as opportunities might occur; and after each sale to deduct from the proceeds of each sale the price paid to the government for the land sold, and pay over promptly to the plaintiff one half of the remainder.

Between the date of the agreement and the fifth day of June, 1886, the plaintiff and the defendant had, pursuant to the agreement, acquired 3,169 acres of land, the title to which stood in the name of the defendant. Upon the latter date defendant gave plaintiff a written acknowledgment to the effect that the defendant had acquired title from the United States government to 3,169 acres of land, and that it was understood and agreed that the plaintiff was to share equally with the defendant in the net profits of the land.

Thereafter, about August 15, 1886, and pursuant to the same agreement, the defendant acquired title to 640 acres of land.

On April 11, 1887, while all the lands were still held under the agreement, the defendant sold and conveyed to one A. R. Taylor, a near relative of the defendant, 1,937 acres of land for the sum of two dollars per acre.

Of this price he received but one dollar per acre, and voluntarily, but without the plaintiff's consent, and contrary to their agreement, gave credit to the grantee for the remainder of the purchase price, which still remains unpaid, the defendant not having taken steps to collect it.

Had this latter amount been collected, the net proceeds of the sale, after deducting the sum of $1.25 per acre paid to the government, would have been the sum of $1,445, one half of which the plaintiff would have been entitled to. Defendant, however, paid him but $125 on account, which the plaintiff admitted in his complaint.

On June 1, 1889, and at various times subsequently, the plaintiff demanded of the defendant an account of the lands sold, and the money received therefor, and also the payment to him of his share of the net proceeds of the sale; but the defendant failed and refused to render him any account, or to pay him any portion of the net profits of the sale, except the sum of $125, admitted as before stated.

Prior to the first demand for an account of the lands sold having been made, that is, on November 1, 1888, the defendant received an offer of three dollars per acre for all the lands acquired under the agreement, and was urged by the plaintiff to accept it; but having sold a portion to Taylor, he could not do so, and has ever since been unable to sell the remainder of the lands.

The land sold to Taylor was the only portion of the lands that the defendant sold, and the only amount of money in which the plaintiff had any interest that the defendant misappropriated was the amount he gave his relative, Taylor, credit for indefinitely.

On these facts the court awarded the plaintiff $597.50, with legal interest thereon from the date of the sale of the portion of the land to Taylor, and an undivided one-half interest in the lands remaining unsold, subject, however, to a lien in favor of the defendant for the sum

of $1.25 per acre, to cover the purchase price he paid therefor to the government.

The defendant contends that the written superseded the oral agreement, and that, according to the latter, the profits were not to be divided until all the lands were sold.

The verbal agreement, alleged in the complaint as the foundation of the action, was entered into in November, 1885, and all the land in question, except the 640-acre tract, was acquired pursuant to it, nearly seven months before the writing was made, which defendant claims superseded the verbal agreement.

The writing itself does not contain anything inconsistent with the verbal agreement; it merely states the substance of it. The only witnesses examined in the cause were the parties to it, and nowhere in their testimony does it appear that the writing was given or received as a contract which was intended to supersede all their previous negotiations and stipulations concerning the same subject-matter. The defendant testified that "there was no written agreement from January till June, and the reason I made that little writing was, I was afraid that Carpenter was afraid of my verbal agreement, and I told him, at the time, my word was as good as my bond."

The plaintiff testified: "My contract with defendant became complete when the writing of June 5, 1886, was executed. That writing contains the substance of the agreement."

The foregoing is all the testimony that was given concerning the writing, and we think the court was justified in finding therefrom, in view of the contents of the writing itself, that it was given and received as a mere acknowledgment or memorandum of the verbal agreement. The statement of the plaintiff that the contract became complete, etc., must, when read in connection with the defendant's statement of the distrust with

which he thought plaintiff regarded him, mean that he (the plaintiff) felt safe in having a tangible and complete acknowledgment of the existence of their verbal agreement and of his interest in the land, the title to which stood wholly in the name of the defendant. The agreement itself was not completely performed at the time the written acknowledgment of it was given to the plaintiff; it was still executory, and remained so until the judgment herein was entered.

Now, as the verbal agreement was, that the lands were to be sold for cash, at a reasonable profit, as opportunities to make sales should occur, and the profits were to be divided promptly after each sale, it is clear that the plaintiff was not compelled to wait until all the lands were sold for his share of the profits.

Defendant further contends that as he borrowed money with which to purchase the lands, and paid interest thereon, the profits should have been ascertained, in the court below, by deducting from the price for which he sold a portion of the lands to Taylor, not only the $1.25 per acre paid to the government therefor, but the interest he had paid thereon, and the taxes and other expenses necessarily incurred in acquiring, keeping, and disposing of the property.

As to the interest, it is sufficient to say that it was not stipulated for in the agreement; and as to taxes and other necessary expenses, even if they were properly chargeable, there was no evidence of them offered nor claim made therefor at the trial.

It is further urged that no provision was made for the payment of future taxes upon the unsold portion of the lands in which plaintiff was awarded an interest.

It was not necessary to make any further provision therefor, because, as that portion of the lands was divided equally between them, and the plaintiff's interest made subject to a lien for $1.25 per acre in favor of the defendant to secure the purchase price, the plaintiff's

interest is taxable to himself alone, and not to the defendant.

As to the 640 acres purchased under the agreement after the written acknowledgment of June 5, 1886, was given, the court, in awarding the plaintiff his half-interest therein in addition to the lien imposed thereon in favor of the defendant for the price per acre paid by him to the government, extended such lien to cover interest at the legal rate from the date of the purchase of the tract.

The finding upon which this allowance of interest is based is claimed to be unsupported by the evidence. We are inclined to think so, too; but as it is in favor of the defendant, he is not injured by it.

It is also claimed by the defendant that the 640-acre tract was erroneously brought within the agreement. The evidence that it was acquired under the agreement is quite strong; both parties testified that it was so acquired; but the defendant, in order to defeat the plaintiff's claim respecting it, testified as follows: "The written declaration I gave Carpenter embraces all the land described in the complaint, except the 640 acres in sections 5 and 6, township 31 south, 19 east; that I acquired in August afterwards. *If he kept his agreement, that was to be included in it.*" To which we may add, the court found that the plaintiff fully performed the agreement upon his part, and this finding is supported by the evidence.

We advise that the judgment and order be affirmed.

BELCHER, C. C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.