## J. B. MOORE v. J. A. WESTBROOK.

(Filed 9 November, 1911.)

1. **Partnership—Contribution of Partners—Dissolution—Payment of Creditors—Interest—Profits.**

   A partner is not entitled to interest on his contribution to the partnership funds or assets until after the date of the dissolution of the firm and the partnership creditors have been paid, in the absence of an agreement to that effect; and the reason applies with greater force to the interest upon profits, which cannot be sooner ascertained.

2. **Partnership—Contributions—Dissolution—Payment of Debts— Adverse Interests—Statute of Limitations.**

   The statute of limitations begins to run against a claim of an advancement made by one of the partners to the firm upon a dissolution after the firm's creditors have been paid, for at that time the relationship between the parties becomes adverse.

3. **Appeal and Error—Statute of Limitations—Burden of Proof— Evidence—Objections and Exceptions.**

   When without exception appearing, and jury trial waived, the trial judge has found against a party pleading the statute of limitations, as to whether the ruling of the judge can be reviewed on appeal, the burden being upon the party pleading the statute, *quære*.

4. **Appeal and Error—Reference—Findings of Fact—Objections and Exceptions—Assignments of Error—Procedure.**

   A party appealing from a finding of fact by the referee, upon the ground that there was no evidence to support it, should enter his exception to the evidence before the referee as well as to the findings of fact, and have both exceptions reviewed by the judge, and then on appeal embrace in his assignments of error the exceptions to the evidence, for the appellate court is not required to examine the record for incompetent evidence not pointed out by exception, and pass upon its admissibility.

5. **Reference—Issues Demanded.**

   The trial judge should submit to the jury issues demanded by a party to a case referred who has not waived his right, under the reference, to a jury trial.

6. **Appeal and Error—Trial Court—Discretion.**

   Exceptions to the rulings of the trial judge made within his discretion are not reviewable on appeal.

7. Reference—Trial—Pleadings—Amendments—New Matter—Evidence.

On additional matters entering the controversy upon amendment to pleadings allowed after reference of the cause has been made and the referee's report received, the parties should be allowed to introduce further evidence; but no reversible error is found if, notwithstanding the refusal of the trial judge to permit such further evidence, the jury has found in favor of the party excepting, on the new matter introduced by the amendments.

APPEAL from *Peebles, J.,* at March Term, 1911, of PENDER.

The summons in this action was issued on 23 August, 1907. The plaintiff filed his complaint on 18 December, 1907, in which he alleged:

1. That he and the defendant and one S. W. Troublefield, on or about the .... day of ........, A. D. 1892, formed a copartnership for the purpose of growing truck and other produce for market, the agreement being that the said J. B. Moore was to furnish the land for said copartnership at and for the price of $7 per acre per year and to pay one-third of the expenses and to receive one-third of the profits; and the said J. A. Westbrook was to pay one-third of the expenses and receive one-third of the profits; and the said S. W. Troublefield was to be paid the sum of $16.50 as a salary for his time not taken by the firm of J. A. Westbrook & Co., one-third of said salary to go as his part of the expenses of said firm, and to receive one-third of the profits, said firm to operate under the firm name of Westbrook, Moore & Co., which said firm continued in active business up to and including the year 1899, when it ceased active business.

2. That during all the years the said firm was actively engaged in said business, the defendant kept the books of account of the said firm and received all the moneys coming to said firm, and now has them in his possession.

3. That from the time of the organization of said firm, and for each year it did business, the said firm was prosperous and made a considerable profit from said business, having used 17½ acres of land furnished by the plaintiff at the rate of $7 per acre, and said firm has never paid the plaintiff the rent due for the said land.

4. That during all the years the said firm did business, and up to the present, the defendant has had the use of the money belonging to the said firm and has used the same for his profit and gain, and though the said firm ceased active business in the year 1899, the affairs of the said firm have not been settled up between the partners, though all the debts have long since been paid except the rent money due this plaintiff, and this plaintiff has demanded of the defendant a settlement of the said firm's affairs and a payment to him of his share of the profits of the said business, but the defendant has failed and refused to settle with the plaintiff, though he has repeatedly promised to do so.

5. That the plaintiff verily believes that his share of the profits of the said business for the said years amounts to the sum of $2,700, if not more; the exact amount thereof this plaintiff cannot say, for the reason that the books of account of said business and the money is now and always has been in the hands of the defendant, and this plaintiff has not had access to the same.

The defendant answered, admitting the partnership on the terms alleged, and its dissolution in 1899, and denying any liability for rents, or that there were any profits made by the partnership.

. At January Special Term, 1910, an order of reference was made, the defendant not excepting thereto, and to which the plaintiff excepted, reserving the right to have the issues of fact tried by a jury.

The referee filed his report on 23 September, 1910, as follows:

1. That the plaintiff, J. B. Moore, the defendant, J. A. Westbrook, and one S. W. Troublefield, did, in the early part of the year 1892, form and enter into a copartnership for the purpose of growing truck and other produce for market on the terms and conditions set out in the first paragraph of the complaint and admitted in the answer.

2. That pursuant to said copartnership agreement, work was begun about February, 1892, the several parties complying with

MOORE *v.* WESTBROOK.

their respective parts of the partnership contract set up in the first paragraph of the complaint and admitted in the answer.

3. That the copartnership began to ship strawberries in the spring of 1893, and continued in business without interruption until the close of the strawberry season in 1899, to wit, on or about 1 June, 1899.

4. That beginning with the year 1893, the partners met from time to time, after the close of the shipping seasons, and went over the business for the past year.

5. That at these several meetings all the parties were present with their books, papers, and records, at which times they ascertained the net results of the respective years in dollars and cents, showing profits or loss, as the case might be, and how much.

6. That according to the terms of the agreement between the copartners, Mr. J. A. Westbrook, the defendant, was to receive the moneys derived from the sale of produce, and did receive them, and Mr. Troublefield and Moore to keep the expense account.

7. That at these annual meetings, every item of expense connected with the conduct of the business was considered and added together and the sum total was deducted from the total receipts, showing the net profit or loss, as the case happened to be.

8. That after deducting the total expenses incurred in the conduct of the business, the copartners, operating under the firm name of Westbrook, Moore & Co., made the following profits for the respective years:

| | |
|---|---|
| 1893 | $ 426.00 |
| 1894 | 546.00 |
| 1895 | 486.00 |
| 1896 | 552.87 |
| 1899 | 195.87 |
| Making a total of | $2,206.74 |

But that no money was paid to plaintiff on account of said profits, except $14.70.

9. That after considering all expenses and receipts for the years 1897 and 1898 combined, the copartnership lost, during these two years, about $657.81.

10. That the plaintiff, J. B. Moore, was entitled to one-third of the profits, and was chargeable with one-third of the loss of said copartnership.

11. That no final settlement or accounting has been had among said copartners.

Upon the foregoing "findings of fact" the referee draws the following conclusions of law:

1. That the contract made and entered into by the plaintiff, J. B. Moore, the defendant, J. A. Westbrook, and one S. W. Troublefield, as set forth in the first allegation of the complaint, was a copartnership contract.

2. That such a contract is lawful and contains nothing illegal, immoral, oppressive, or contrary to public policy, and that said contract was binding upon all parties thereto.

3. That the defendant, J. A. Westbrook, stood in a fiduciary capacity with respect to his copartners, plaintiff J. B. Moore and S. W. Troublefield, which relationship imposed upon him the burden of a strict accounting to his copartners, plaintiff J. B. Moore and S. W. Troublefield, for all funds coming into his hands in such capacity.

4. So that the referee recommends that the plaintiff recover judgment against the defendant for $735.58, being one-third of the total amount of profits made by the copartnership during its existence, less $219.27, being the plaintiff's share of the loss for the years 1897 and 1898, and $9.80 being two-thirds of the check for $14.70 not heretofore accounted for. That is to say, that plaintiff is entitled to recover judgment against the defendant for the net sum of $506.51, together with the costs of this action.

5. Considering this case in the light of all circumstances, the referee recommends that the plaintiff should not recover any interest on the amount due, except from the date of summons, 23 August, 1907.

Respectfully submitted, this 23 September, A. D. 1910.

R. W. HERRING, *Referee.*

Both parties filed exceptions to the report, and the plaintiff demanded a jury trial.

The exceptions of the defendant were as follows:

*As to findings of fact:*

1. To finding of fact No. 6, for that it appears from the plaintiff's own evidence that plaintiff Moore and one S. W. Troublefield received some of the moneys derived from the sale of produce by said firm.

2. To finding of fact No. 8, for that there is no competent evidence upon which to base said finding.

3. To finding of fact No. 11, for that the testimony of the plaintiff and the witness Troublefield shows a settlement to have been made with the defendant.

4. To the above referred to finding of fact No. 8, for that the same is so vague and indefinite as to amount to no finding in law, in so far as it is attempted to find that any profits were made by the said firm.

*As to conclusions of law:*

1. To conclusion of law No. 4, if the same shall be considered by the court to be a conclusion of law, for that the same is based upon findings of fact without competent evidence to support such findings, and which finding is so vague and indefinite as to amount to no finding.

2. To conclusion of law No. 5, in so far as the same may be considered as a conclusion of law by the court, and in so far as it may involve any conclusion that there is any amount due from the defendant to the plaintiff.

At March Term, 1911, an amendment to the complaint was allowed alleging, in addition to the matters set out in the original complaint, that he had made advances to the partnership amounting to about $1,500, and that the defendant was liable for one-third thereof and interest.

The defendant answered the amendment, denying that the advancements were made, and pleading the three-years statute of limitations thereto.

He also asked to be allowed to plead the statute of limitations as to the claim for rents, but his Honor would not permit him

MOORE *v.* WESTBROOK.

to do so, because the claim for rents was in the original complaint, and the defendant excepted.

Evidence as to the advancements made by the plaintiff was offered by both parties before the referee and he made his finding thereon. The case was tried before the jury upon the evidence taken before the referee.

The defendant offered additional evidence, not introduced before the referee, on the claim for advancements, and, upon the refusal of his Honor to allow it, excepted.

The jury returned the following verdict:

Second. Should the said J. A. Westbrook have turned over to the plaintiff his one-third of said profits, on the 1st day of June of the year they were made, and as they were earned, and did he fail to do so, and used the plaintiff's one-third of said profits as his own? Answer: Yes.

Third. Has the defendant paid to the plaintiff any part of said net profit, and if so, when, and in what amount? Answer: No.

Fourth. Did the plaintiff advance to the said firm the items as set out and claimed by him to have been advanced, in plaintiff's fourth exception, during the years mentioned in said exception, aggregating the sum of $1,559.04, or any part thereof, and if so, which items, if he did not advance them all? Answer: Yes.

Fifth. Did the defendant Westbrook pay to the plaintiff any other sums of money on account of the said copartnership, other than the credit mentioned in the fourth exception, amounting to the sum of $916.32, and if so, what sums were so paid, and the date of payment? Answer: No.

Sixth. Did the defendant keep the money of the said firm with his own, and use it as his own, except that part paid out by him for said firm? Answer: Yes.

Seventh. Did the defendant Westbrook ever pay to the plaintiff any money on account of his share in the profit of said firm; if so, when and what amount? Answer: No.

Eighth. Should the plaintiff recover interest on the amounts advanced by him to the firm, and not repaid to him, from the

1st day of June of each year that they were advanced, until repaid, and if not, then from what date should the plaintiff recover interest? Answer: No; from the time the firm ceased to do business.

Ninth. Should the plaintiff recover interest on his share of the profits of said firm from the 1st day of June of each year when they were earned, until paid, and if not, then from what date should the plaintiff recover interest? Answer: No; from time firm ceased to do business.

Tenth. What amount of yearly rent is the plaintiff entitled to recover of the defendant, if any, for the years 1892, 1893, 1894, 1895, 1896, 1897, 1898, and 1899? Answer: $40.83⅓.

Eleventh. Is the plaintiff entitled to interest on the rent money due him, from the 1st day of June of each year that the rents became due, and if not, from what date should the plaintiff recover interest on the rents? Answer: No; from time firm ceased to do business.

Twelfth. Were the copartners to meet on or about the 1st day of January each year, after the shipping season, and have a settlement with each other, and divide the profits, as claimed by the plaintiff in his fifth exception? Answer: Yes.

It was agreed that the judge might pass upon the issues of fact raised by the plea of the statute of limitations to the amendment of complaint.

The court then found as a fact from the said evidence and the pleadings that the plaintiff's claim for his advances was barred by the statute of limitations, to which finding of the court the plaintiff excepted.

There was no evidence that the partnership owed any debts at the time of the dissolution in 1899, except the debts between the partners, or that there was anything to be done, except to settle.

The plaintiff demanded settlement of the defendant from time to time, and the defendant denied any liability.

His Honor rendered judgment in favor of the plaintiff for his part of the profits and rents, with interest thereon from

1 January, 1900, and denied his motion for judgment for advances made, holding that this claim was barred by the statute of limitations.

The plaintiff excepted:

(1) Because his Honor held that the claim for advances was barred by the statute of limitations.

(2) Because the court erred in refusing to give judgment for the plaintiff for interest on his rents and profits from the year they became due or were earned.

The defendant excepted:

(1) For the error in refusal of the court to overrule finding of fact No. 8, as found by the referee, and conclusions of law Nos. 4 and 5, as found by the referee, first exception, for that no competent evidence was introduced upon which to base the said finding of fact and said conclusions of law.

(2) That the court committed error in submitting to the jury each and all of the issues which appear in the record.

(3) That the court erred in submitting to the jury the evidence taken before the referee and in submitting the cause to the jury upon such evidence.

(4) That the court erred in refusing to permit the defendant to plead the statute of limitations as to the amounts alleged to be due as rents.

(6) That the court erred in refusing to allow the defendant's motion to set aside the verdict.

(7) That the court erred in refusing to grant the defendant a new trial.

(8) That the court erred in signing the judgment which appears of record.

*E. K. Bryan, J. T. Bland, E. L. Larkins, and John D. Kerr for plaintiff.*

*Robert Ruark for defendant.*

PLAINTIFF'S APPEAL.

ALLEN, J., after stating the case: The exceptions of the plaintiff cannot be allowed.

As to the claim for interest, it is alleged in the complaint that the partnership "continued in active business up to and including the year 1899, when it ceased active business," and the judgment appealed from, based on the findings of the jury, allows interest from 1 January, 1900, which according to the complaint was the time of the dissolution. There is no claim that the defendant agreed to pay interest.

"A partner is not entitled to interest on capital which he contributes to the firm, although his contribution is greatly in excess of that of his copartners, unless they have agreed he may have interest." Cyc., vol. 30, p. 698.

The cases cited in the note fully sustain the text. *Sheppard v. Smith,* 20 Ala., 750; *Carpenter v. Hathaway,* 87 Cal., 439; *Tutt v. Land,* 50 Ga., 350; *Thompson v. Noble,* 108 Mich., 25; *Lamb v. Rowan,* 83 Miss., 53; *Smith v. Smith,* 18 R. I., 722; *Hart v. Hart,* 117 Wis., 663; *Rodgers v. Clement,* 162 N. Y., 422.

In the last case the Court says: "If the moneys advanced by the plaintiff to the firm were contributions of capital or additions to plaintiff's capital, then he was not entitled to interest on the same, since he must rely upon the profits of the business to compensate him for the investment, unless there was a special agreement between the partners that interest should be allowed."

The reason applies with greater force to the claim for interest on profits, which cannot be ascertained until after the dissolution.

The question was considered by *Chief Justice Ruffin* in *Holden v. Peace,* 39 N. C., 228. He says: "The general rule for interest, on accounts in ordinary dealings, is that it is chargeable only after an account has been rendered, so that the parties can see which is the debtor and what he has to pay, unless it be agreed otherwise, or the course of business shows it to have been otherwise understood. This applies still more forcibly as between partners, because their accounts cannot be fully made up between them without, in truth, taking all the accounts of the firm—in other words, without a dissolution; and

it is impossible to tell before what either would be bound to pay or entitled to receive. Therefore, if the parties mean' that interest should be charged on the accounts of the partners, for dealings in the shop and money withdrawn for personal expenses or other things, from year to year, the course is to come to an agreement to that effect, and then for balances appearing upon the individual accounts annually or oftener, according to the agreement to that effect, charges of interest are made from time to time, or if omitted, will be allowed in making the final settlement. If there be no agreement upon the subject, it must be understood that the parties, especially when they have no separate property, were aware that each must draw from the firm the means of supporting himself and his family, and that an exact equality could not be expected in those matters, and, therefore, that it was not intended that interest should be charged during the partnership."

The exception to the ruling that the claim for amounts advanced by the plaintiff is barred by the statute of limitations is equally untenable.

It does not appear that there were any debts to be paid or collected at the time of the dissolution of the partnership, and nothing remained to be done except to settle. The relationship between the parties then became adverse, and the right of action accrued to the plaintiff.

The case of *Murray v. Penny*, 108 N. C., 324, seems to be directly in point. In that case the partnership between the plaintiff and defendant was formed in 1884, and dissolved in 1885. The action was commenced in 1890 to recover $400, which the plaintiff alleged to be due him on a fair accounting, and the defendant relied on the limitation of three years as a defense. It was held that the plaintiff's cause of action was barred, and the Court said: "Unless there is some agreement, express or implied, fixing a period for accounting beyond the time of dissolution, or circumstances that render an accounting impossible, the statute begins to run from the time the partnership is in fact dissolved. Wood on Lim., sec. 210. During the existence of the partnership the partners mutually sustain the

relation of trustee and *cestui que trust.* Where there are debts still due the firm, and after dissolution one of the partners is to collect them, or other circumstances showing that a settlement is impossible, the relation of trust between the partners may continue till some act puts them in adversary position to each other. Nothing of that kind is in evidence. There is nothing to show that any debts were outstanding and uncollected, or that any trust remained to be executed. On the contrary, it appears that an immediate settlement was possible, and that both partners agreed that it should be made at once."

We have passed on the exception of the plaintiff as to the statute of limitations, but it is doubtful if he can raise the question on this record, as the plea of the statute by the defendant casts the burden on the plaintiff to prove that his cause of action is not barred (*Hussey v. Kirkman,* 95 N. C., 64), and a jury trial being waived on this issue, the judge, without any exception to evidence, has found the fact against the plaintiff.

We find

No error.                DEFENDANT'S APPEAL.

ALLEN, J. The first exception of the defendant is to the refusal of the court to overrule a finding of fact made by the referee.

The exception is not based upon the ground that there was no evidence to support the finding, but that there was no competent evidence, and a proper consideration of it would require us to go through the entire record, and pass on the admissibility of evidence, when there is no assignment of error that incompetent evidence had been admitted.

This we are not required to do. If the appellant desired to preserve the exception, it was his duty to enter his exception to the evidence before the referee, and to except also to the finding of fact, and to have both exceptions reviewed by the judge, and then on appeal to embrace in his assignments of error the exceptions to the evidence.

We find, however, on an examination of the evidence of the plaintiff, that he testified to facts justifying the finding, and

the rule is well settled that we cannot review the action of the judge when there is any evidence.

It was the duty of the judge to submit the issues to the jury, upon demand of the plaintiff, as he had not waived his right to a jury trial, and the exception of the defendant to such action cannot be sustained.

The fourth, fifth, sixth, and seventh assignments of error are to ·rulings within the discretion of the judge; and the eighth assignment is formal for the purpose of preserving the other exceptions.

The third assignment would not be free from difficulty if it had not been held that the claim of the plaintiff for advances made to the firm was barred by the statute of limitations; but with this decision in favor of the defendant, he cannot complain that he was not allowed to offer evidence in a'ddition to that introduced before the referee on the claim.

The general rule is, undoubtedly, as his Honor held, that upon the coming in of a report, under a compulsory reference, the issues are to be determined by the jury on the evidence before the referee; but if an amendment is allowed, after the report is filed, containing an additional charge, the parties ought to be allowed to offer evidence as to such charge, because it was not embraced in the reference.

The defendant has not, however, suffered any injury by the refusal to allow him to introduce the evidence, as there is no recovery against him on the additional matter contained in the amendment.

We find no error of which the defendant can complain.

No error.