Appeal from Fifth District.

## MORGAN v. CHILD, COLE & CO.

No. 2664. Decided January 12, 1916. (155 Pac., 451.)

1. PARTNERSHIP — CONTRACT—QUESTION FOR JURY. The question whether a written agreement created the relation of partners is ordinarily a question of law to be determined by the court from the face of the agreement. (Page 425.)

2. PARTNERSHIP—RELATION—INTENT. A partnership is founded in voluntary contract, though it does not require any express agreement between the parties, as the law regards their conduct rather than their langauge in determining whether a voluntary association in a business enterprise amounts to a partnership or not.   (Page 425.)

3. PARTNERSHIP—PARTICULAR PARTNERSHIP. Parties may become partners for a single or for a series of transactions.   (Page 425.)

4. PARTNERSHIP—CONSTRUCTION OF. CONTRACT—INTENT. The court, in determining whether a particular contract constitutes a partnership between the parties thereto, will endeavor to ascertain their intention as disclosed by the entire transaction. (Page 425.)

5. PARTNERSHIP—TERMS—SPECIAL PROVISIONS. Peculiar provisions of a partnership contract, imposing obligations differing from those which the law ordinarily infers from a partnership or conferring unusual rights and powers, are construed to effectuate the honest intention of the parties as shown by their language and their conduct, as partners may enter into any agreement for the management of their joint affairs that they deem proper, and so far as they are concerned any reasonable agreement will be enforced.   (Page 426.)

6. PARTNERSHIP—REQUISITES—PROFITS AND LOSSES. Merely to share profits and bear losses does not always determine the question of partnership, and whether parties are partners as between themselves is largely controlled by their intention.   (Page 426.)

7. PARTNERHIP—STIPULATIONS—MODIFICATION OF GENERAL LAW. As between themselves, but not as to third persons without notice, partners may enter into stipulations by which the general law governing partners may be modified.   (Page 426.)

8. EVIDENCE—PAROL EVIDENCE—PARTNERSHIP AGREEMENT. The written agreement as between partners may be modified by parol at any time.   (Page 426.)

9. PARTNERSHIP—ACTION BETWEEN PARTNERS—INSTRUCTIONS. In an

action between partners, it is the trial court's duty, on request, to state the correct legal principles governing the right or liability of partners in the particular case, to inform the jury of the questions to be decided by them, and those to be determined by the court.   (Page 426.)

10. PARTNERSHIP—RELATION—QUESTION FOR JURY. Whether a partnership exists in a particular case, where the evidence is conflicting or is open to more than one inference, is for the jury, under proper instructions, and the intention of parties in a particular case to become partners may be also a question for the jury. (Page 426.)

11. CORPORATIONS—POWERS—PARTNERSHIP. The question whether a corporation may or may not become a partner depends on whether by its charter or statute it is given capacity to do so. (Page 427.)

12. TRIAL—INSTRUCTIONS—IGNORING THEORIES OF CASE. Where the court is required to charge with respect to the conflicting or inconsistent theories of both plaintiff and the defendant, it may not instruct the jury that they may render a verdict for one of the parties without considering and finding all of the elements necessary to support a verdict both in law and in fact in favor of that party, and it was error in an action between partners to ignore their special agreement defining and limiting their rights as to the sale of partnership property.   (Page 427.)

13. TRIAL—INSTRUCTIONS—CURE OF ERROR—IGNORING ISSUES. Such error was not cured by another instruction defining the rights of the parties based on the alleged agreement.   (Page 427.)

14. PARTNERSHIP—RIGHTS OF PARTNERS—SPECIAL AGREEMENT. Where plaintiff and defendant were partners with respect to a stock transaction, and there was any further agreement that defendant should hold the stock until it reached $1.50 per share, it was defendant's duty not to sell it until it had reached that price, or until the agreed time limit, if any, or until a reasonable time had elapsed, or until plaintiff ordered his share of the stock sold.   (Page 427.)

15. PARTNERSHIP—ACTION—QUESTION FOR JURY — SALE OF STOCK. On evidence in an action upon a partnership agreement for the purchase and sale of stock, *held*, that whether it was agreed that defendant should hold the stock until it sold at $1.50 per share was for the jury.   (Page 428.)

16. PARTNERSHIP—TRANSACTIONS—ACQUIESCENCE. In such case, if plaintiff acquiesced in the sales of stock, or defendant in good faith believed or assumed that he was satisfied with its sale at prices shown by its statements to him, plaintiff could not recover; but, if he did not acquiesce in such sales, he might re-

cover under the agreement, if any, to hold the stock until it reached a certain price. (Page 428.)

17. PARTNERSHIP—ACTION BETWEEN PARTNERS—AMOUNT OF RECOVERY—INTEREST. In plaintiff's action upon a partnership agreement, whereby he was to furnish certain information and defendant was to furnish the necessary money to purchase and sell stock, interest could not be allowed, except by special agreement. (Page 429.)

For first appeal see 41 Utah, 562, 128 Pac. 521.

Appeal from District Court, Fifth District, *Hon. Joshua Greenwood,* Judge.

Action by James Morgan against Child, Cole & Company.

Judgment for defendant. Plaintiff appeals.

REVERSED AND REMANDED, with directions to grant new trial.

B. N. C. Stott, for appellant.

George W. Bartch, and W. H. King, for respondent.

FRICK, J.

The plaintiff commenced this action to recover damages for an alleged breach of contract. The case is here on second appeal. *Morgan* v. *Child, Cole & Co.,* 41 Utah, 562, 128 Pac. 521. The pleadings on the second trial were those used on the first one. They are sufficiently set forth in the former opinion. We shall, however, refer to such parts as we may deem necessary in the course of the opinion. At the first trial the district court sustained defendant's motion for a nonsuit. The motion, as appears from the former opinion, was sustained "on the ground that the contract and the evidence adduced by the plaintiff show that he and the defendant were co-partners in the transaction, and that an accounting between them was a prerequisite to the maintenance of the action, and that 'the plaintiff had no right to sue the defendant at law,' and had 'mistaken his remedy, if any he has.' " A judgment of dismissal was accordingly entered. We reversed that judgment

Morgan v. Child, Cole & Co., 47 Utah 417.

and held that the court erred in sustaining the motion for a nonsuit. In passing upon that question, Mr. Justice Straup, in speaking for the court, said:

"It is seen that the motion was granted and the action dismissed, not on the ground of insufficiency of evidence, but on the ground of a mistaken remedy. We think the trial court erred. In this, as in many other states in which the formal distinctions between actions at law and suits in equity are abolished, the court may administer relief according to the nature of the cause set out, whether it is such as would be granted in equity or such as would be given at law. 3 Cyc. 736. Our Constitution (section 19, art. 8) expressly provides that 'there shall be but one form of civil action, and law and equity may be administered in the same action.' *Volker-Scowcroft Lumber Co.* v. *Vance*, 36 Utah 348; 103 Pac. 970; 24 L. R. A. (N. S.) 321, Ann. Cas. 1912A, 124."

The defendant also set forth in its answer that the contract sued on was uncertain and unintelligible and was unenforceable for that reason; that it was against public policy and void; that it was conceived in, and procured by, fraud, and was entered into to defraud the public; that it was a gambling contract; that it was not authorized by the defendant; that it was without consideration; and that the defendant had fully complied with the terms and conditions thereof. We ruled, however, that the contract was not ambiguous, and that it was not shown to be, nor was it upon its face, against public policy. Upon the other defenses, there was no evidence, except that the defendant had fully performed the terms of the contract; neither is there any evidence upon those issues now except the last one. None of the issues referred to were submitted to the jury at the last trial. The jury returned a verdict in favor of the defendant "no cause of action." Judgment was entered accordingly, and the plaintiff again appeals.

In view that the court, in effect, charged the jury that the contract entered into between the parties and sued on here constituted them partners inter se, we shall set it forth in full. It reads:

"Eureka, Utah, June 3, 1908.

"This agreement made this day between James Morgan of the first part, and Child, Cole & Co. of the second part. The party of the first part does agree to give to the party of the

second part certain information which he has in his possess-
sion and will hereafter obtain concerning this property known
as the Sioux Consolidated Mining Co., and the party of the
second part does agree to purchase about forty thousand
shares of the stock of the said company, or an investment
of not to exceed fifteen thousand dollars ($15,000.00) and
all of the profits derived from the purchase and sale of this
forty thousand shares to be divided equally between the party
of the first part and the party of the second part.

"It is further agreed that the party of the first part shall be
liable for his proportion of any losses the same as profits, and
in case the information given by the party of the first part to
the party of the second part is not correct or complete the
party of the first part forfeits all his rights to and share of
the profits, and this agreement becomes void except as to his
liability in case of loss. This agreement is binding until all
of the said stock has been bought and then sold.

"James Morgan, Party of the First Part.

"Child, Cole, & Co., by Geo. A. Shepard,

"For the Party of the Second Part."

The defendant is a corporation and is a member of the Salt
Lake Stock & Mining Exchange, and, at the time in question,
was engaged in the business of stockbroker, with its principal
office at Salt Lake City, but was also conducting a branch of-
fice at Eureka, Utah, of which the George A. Shepard who
signed the contract was the general manager. Said Shepard
entered into and executed said contract on the day it is dated
on behalf of the defendant, without the knowledge of the
president. On the day following, Shepard telephoned the
substance of the agreement to Mr. Child, the president of the
defendant, but did not disclose that the agreement had been
reduced to writing. Mr. Child declined to purchase the stock
contemplated by the agreement, and so advised Mr. Shepard,
unless the plaintiff would provide or "put up" security for
his portion of any losses that might accrue; that is, any losses
that should arise by the decline of the price of the stock. Mr.
Shepard informed plaintiff that Mr. Child had refused to pur-
chase the stock as contemplated by the agreement, unless the
plaintiff furnished security for his half of the losses in case the

price of the stock should decline after it was purchased, and that if the plaintiff would put up security the stock would be purchased upon the terms and conditions stated by Mr. Shepard. Upon the subject just referred to plaintiff testified:

"I next saw Shepard the next morning, June 4th, at my livery stable, my place of business, between eight and nine o'clock. He came to my office and said that he had just got a phone from Child, Cole & Co., and that they were not satisfied with the contract, and if they were going to carry my share of the stock for $1.50 a share that they felt that I ought to put up security for it. I said: 'All right. If that is the way you feel about it, you name the price.' So we talked the matter over and decided on $3,000. I was to give a note, a note signed by J. C. Sullivan, for that amount."

Mr. Child also gave his version of the transaction as follows:

"On the morning of June 4, 1908, I had a long distance telephone talk from Salt Lake to Eureka, with George A. Shepard, and referred to the manner of procuring security, and this $3,000 note is the security that was given me in response to my telephone direction to protect us against any loss that might be incurred. I did not purchase the stock until after I heard from Mr. Shepard again that Mr. Morgan had agreed to give this note of $3,000. I then purchased the stock."

The information contemplated by the original agreement and the security required by Mr. Child were furnished by the plaintiff.

The parties, with respect to the giving of security, seem to agree. The plaintiff, however, further contends that, when he was required to provide or "put up" the $3,000 note as security for possible losses, it was agreed between him and Mr. Shepard, who represented the defendant, that the defendant should hold plaintiff's share of the stock, that is, one-half of the stock purchased, until the stock should reach the price of $1.50 per share. Upon that point the plaintiff, upon cross-examination, further testified:

"The $3,000 note was to carry my share of the stock. They were to put up all the money to buy the stock. I put up a note

the next morning on a different contract altogether from the written one. The next morning Shepard said that Child, Cole & Co. insisted upon my putting up security to indemnify them against loss if they were to carry the stock for $1.50 a share. He asked me for security, if they were going to hold it for $1.50, and I told him if that is the way he felt about it I would get it—or words to that effect. I understood that Child, Cole & Co. would do the buying on the Exchange. I knew they were stockbrokers. They were to buy it at once.''

Mr. Shepard denied that the agreement was to the effect that the defendant should hold or carry the stock until it had reached the price of $1.50, or any particular price. Mr. Child also testified that he had never heard of such an agreement until the action was commenced. It was also shown that there were 17,500 shares of stock purchased by the defendant under the contract; that the total cost of the stock purchased, including interest, amounted to $16,222.15; that the defendant sold the same for $16,925.75, realizing a net profit thereon of $703.60, one-half of which, it was shown, was tendered to the plaintiff as his share of the profits under the agreement, but which he refused to accept. The plaintiff also proved the fluctuations of the price of the stock after the agreement had been entered into, and proved that for a short time the stock sold on the stock exchange for $1.62; that he had requested the defendant to sell his portion of the stock when it had reached the price of $1.50 per share; that the defendant refused to do so, claiming that all of the stock had been theretofore sold for the amount before stated; and that plaintiff had been tendered his share of the profits as aforesaid.

Upon the evidence the plaintiff asked that he be given judgment for the difference between what the stock cost, to wit, $16,222.15, and what said stock could have been sold for had the defendant kept and sold it at the highest price obtainable, to wit, $1.62 per share. If the defendant had sold said 17,500 shares at $1.62 per share, it would have realized $28,340 therefor, or $12,117.85 in excess of what it did in fact obtain from the sales at the time they were made. The plaintiff contends, therefore, that under the terms of the contract entered into between him and the defendant he is entiled to recover one-

half of the $12,117.82, or the sum of $6,058.91, with legal interest from the time he made demand upon the defendant. Upon the other hand, the defendant, in effect, contends that under the agreement entered into between the parties they were partners; that as a partner it had the legal right to sell the stock at any time; that it sold it at the prevailing market price and accounted to the plaintiff for his half of the net profits; that it has complied with the terms of the agreement; that the sales were made as just stated; and that it had tendered the plaintiff his share of the net profits, and hence he cannot recover.

The court, among other things, instructed the jury:

"The court instructs you that the agreement of June 3, 1908, set forth in the amended complaint, constituted the plaintiff and defendant partners in the stock to be purchased thereunder, and, if the note signed by J. C. Sullivan and the plaintiff was given to defendant merely for the purpose of protecting defendant against loss on the plaintiff's share or interest in the stock to be purchased pursuant to said agreement, then your verdict must be for the defendant.

"If you believe from the evidence that on the 4th day of June, 1908, G. A. Shepard reported to the plaintiff that the defendant would not purchase any stock under the written agreement of June 3d, referred to in the evidence, and in the amended complaint, until the plaintiff had arranged security to protect the defendant against loss, from decline in the price of the stock, on plaintiff's interest therein, being then the stock contemplated to be purchased under the agreement of June 3d, and plaintiff agreeing to furnish said security and thereafter gave to said Shepard the note signed by himself and J. C. Sullivan, then the court charges you that the plaintiff and defendant were partners, and your verdict in that event must be for the defendant.

"The court charges you that, if the plaintiff and defendant were partners, then the defendant had a right to sell the partnership stock at any time it might desire; and even if you should believe that the plaintiff objected to the sale of any of the same or any part thereof, until it reached $1.50 per share,

the defendant would have a right to sell and dispose of the same at the fair market price."

The plaintiff excepted to the foregoing instructions and has assigned the giving of them as error prejudicial to his rights. Defendant's counsel contend that the foregoing instructions merely reflect defendant's theory; that the court has also charged the jury in accordance with plaintiff's theory; that all of the instructions must be read and considered as a whole; and that, when so considered, the plaintiff has no cause for complaint.

Where a written agreement is presented, the question of whether the parties thereto created the relation of partners is, ordinarily, a question of law, and must be determined by the court from the face of the agreement. The difficulty with the charge as given by the court, however, is that the court not only declared the plaintiff and defendant partners    **1** *inter se,* but it also assumed and in effect determined that their rights and liabilities under the agreement in question were those of general partners where the rights of third parties are involved. It is often difficult to determine whether a writing constitutes the parties thereto partners *inter se* as well as general partners as to third persons.

In 30 Cyc., in referring to how the relationship is **2, 3, 4** created, it is said:

"Our law has always treated the partnership relation as founded in voluntary contract. It does not surprise parties into a partnership against their will, although it does not require an express agreement between them, nor is it bound by their statements of intention in associating themselves together for business transactions. It will regard their conduct rather than their language in determining whether their voluntary association in a business enterprise amounts to a partnership or not."

Parties may become partners for a single or for a series of transactions. Same volume, 254. At page 360, same volume, it is said:

"When a court is called upon to determine whether a particular contract constitutes a partnership *between the parties thereto,* its controlling purpose is to ascertain *their intention* as it is disclosed by the entire transaction." (Italics ours.)

In speaking of the rights and duties of partners *inter se,* at page 363, same volume, it is further said:

"Oftentimes the partnership contract contains peculiar provisions, imposing upon one or more of the partners obligations differing from those which the law ordinarily infers from the partnership relation, or conferring unusual rights and powers. In all such cases the courts will strive to construe these provisions so as to effectuate the honest intentions of the parties, as shown by the language of the contract and their conduct under it."

To the same effect, see same volume, 439.

Partners may "enter into any agreement between themselves for the management of their joint affairs that they may deem proper," and, so far as the partners are concerned, any reasonable agreement will be enforced by the courts. *Hall* v. *Sannoner,* 44 Ark. 34.

Merely to share profits and bear losses does not always determine the question of partnership. Parsons on Partnership (4th Ed.) Section 44. Whether parties are partners or not as between themselves is very largely controlled by their intention. Id., Section 54; 1 Lindley on Partnership (2d Am. Ed.) 10 *et seq.*

As between themselves, but not as to third persons without notice, partners may enter into stipulations by which the general law governing partners may be modified. Parsons on Partnership, Sections 84-87, inclusive. Moreover, the written agreement as between themselves may be modified by parol at any time. Lindley on Partnership (2d Am. Ed.) 10.

Referring again to 30 Cyc. 592, the duty of the court to instruct the jury, and what are questions of law and what of fact, are clearly and tersely stated thus:

"It is the duty of the trial court in instructing the jury, at the request of either party, to state correctly the legal principles governing the right or liability of partners in the particular case, * * * to inform them of the questions they are to decide and those which the court determines, and to refuse improper requests for instructions. Questions of law, whether presented by the pleadings or by undisputed evidence that warrants but one legal inference, are to be determined by the court. Questions of fact, especially those raised by conflicting evidence, are to be determined by the jury. What constitutes a partnership is a question of law; but

whether a partnership exists in a particular case is for the jury, under proper instructions from the court, if the evidence is conflicting or if it is open to more than one inference. Whether the intention of parties in a particular case was to become partners may be a question for the jury. It may also be a question for the jury whether persons who are admitted to be partners intended to contract or to hold property as a firm or as individuals."

Again, the question of whether a corporation may or may not become a partner depends upon circumstances, and whether it, by its charter or statute, is given capacity to do so. Parsons on Partnership (4th Ed.) Section 24; 1 Bates, Law of Partnership, Sections 1 and 133. In view, 11. however, that the mutual rights and liabilities of the parties to this action as to the transaction in question are practically the same as though they were partners (1 Bates, Law of Partnership, 133), we, for the purposes of this decision, shall assume without deciding, that the defendant had legal capacity to become a partner, and that the plaintiff and defendant under the agreement as written and as orally modified sustained the relationship of what Mr. Bates, in Volume 1, Section 12, of his work, terms a "particular partnership."

Assuming therefore that the parties did sustain the relationship of partners *inter se*, yet the instructions 12-14 complained of are clearly erroneous. The court not only charged the jury that the plaintiff and the defendant were partners, but it told them that, even though they believed "that the plaintiff objected to the sale of any of the same (the stock), or any part thereof, until it reached $1.50 per share," nevertheless the defendant had the "right to sell and dispose of the same at the fair market price." The other instructions excepted to are practically to the same effect. The court thus entirely overlooked or ignored the law we have referred to, namely, that partners by agreement may define and limit each other's duties, rights, and liabilities in so far as those things merely affect themselves. The contention of defendant's counsel that the foregoing instructions merely reflected their own theory, and that the court also charged the jury upon plaintiff's theory, does not cure the error; it does not even minimize it. It is quite true that the court often is required to charge the jury with respect to the theories of both the plaintiff and

the defendant and that those theories may be in conflict or in-consistent when compared with each other. When that is the case, however, the court may not instruct the jury that they should, or may, render a verdict for one of the parties without considering and finding all of the elements that are necessary to support a verdict both in law and in fact in favor of that party. That is just what the court did in this case. It told the jury that, notwithstanding any agreement that the parties may have made with regard to the holding of the stock, the defendant, as a partner, nevertheless, could sell it at any time if it did so "at the fair market price." That is not the law. The court should have instructed the jury that, although the plaintiff and the defendant were partners *inter se* with respect to the transaction in question, they nevertheless had the right to enter into an agreement that the plaintiff's share of the stock should be withheld from sale until a certain time had elapsed, or, as in this case, until the stock had reached a cer-tain price, provided it should do so within a reasonable time, and that if the jury found the fact to be that the parties did enter into an agreement whereby the defendant had agreed to hold the stock until it should reach the price of $1.50 per share, then it was the duty of the defendant not to sell it until it had advanced to the price, or until the time limit, if any was agreed upon, or, in the absence of any time limit, until a rea-sonable time had elapsed, or until the plaintiff had ordered his share of the stock sold.

In this case there is, however, another element. There is evidence on behalf of the defendant that whatever stock was bought or sold it furnished the plaintiff a statement showing the amount bought or sold, and the prices for which it was either bought or sold; that the plaintiff did not object to the sales as made, nor to the prices for which it was sold. Upon the other hand, the plaintiff produced evi-dence that he did object to the sales as made, and that he de-manded that his portion of the stock be held until the price had reached $1.50 per share; that, when it had reached that figure, he had requested the defendant to sell the same; and that it refused for the reason that it had already sold all the stock purchased under the agreement and had tendered to

him his share of the net profits. As to that, the same as to
the agreement to hold the stock until it could be sold for $1.50
per share, there was therefore a direct conflict between the
evidence of the plaintiff and that of the defendant. That ques-
tion, therefore, must also be determined by the jury under
proper instructions. If the jury should find, therefore, that
the statements were furnished as before stated, and that the
plaintiff acquiesced in the sales, or that the defendant, in good
faith, believed or assumed that he was satisfied with its acts
in selling the stock for the prices contained in the statements,
then he could not recover for any of the stock sold under those
circumstances. If, upon the other hand, the jury found that
the plaintiff did not, tacitly or otherwise, acquiesce in or con-
sent to the sale of his portion of the stock at the prices for
which it was sold, then the jury should find that fact or issue
in his favor, and he then might recover under the agreement
to hold the stock, if they found such an agreement was entered
into. Of course, if the jury should find that no agreement to
hold the stock was entered into, and that the defendant in
good faith sold the same for the market price and had paid or
tendered to the plaintiff his share of the net profits, he cannot
recover.

We remark that, in view that this case must be reversed and
remanded for a new trial, we perhaps should say a word re-
specting the interest charge that was allowed to the de-
fendant against the plaintiff on the money it had ad-      17
vanced for the stock. By referring to the agreement, it
will be seen that the plaintiff, as his share of the capital, was
to furnish certain information, and the defendant as its share,
was to furnish the necessary money to purchase the stock and
to sell the same. Each one had therefore provided the capital
agreed upon. Under such circumstances, interest cannot be
allowed between partners, except by special agreement. 1
Lindley on Partnership (2d Am. Ed.), 389.

Plaintiff has also assigned errors upon the admission and
exclusion of evidence. Even though it were conceded that a
few errors crept into the record in that regard, yet those er-
rors were harmless. True it is that the court allowed de-
fendant's counsel a little more latitude in cross-examining the

president of the defendant, whom plaintiff was compelled to call as a witness, than it should have done. It also admitted the evidence of one or two of the directors of the mining company to the effect that they were not informed of the discovery or existence of the ore in the mine at the time. We can perceive no relevancy to that evidence in view of the issues and the other evidence adduced at the trial. We should, however, not reverse the judgment for that reason, since all of those errors were quite harmless. They, however, may, and no doubt will, be obviated on a retrial of the case in the event the issues are the same.

For the reasons stated, the judgment is reversed, and the cause is remanded to the district court of Juab County, with directions to grant a new trial. Appellant to recover costs.

STRAUP, C. J., and McCARTY, J., concur.