The opinion of the Court was drawn up by
Kent, J.
The defendant moves to set aside the verdict on the ground that the same is against the weight of the evidence.
It clearly appears that the articles were delivered to, and purchased by, Stephen Jewell & Co.; that the -credit was given to them; that they gave their negotiable promissory note for the amount and paid a part, and gave a new note for the balance. The plaintiffs claim now to recover the amount of the last note, on the ground that the defendant’s intestate is liable to them, because he was the mortgagee of the mill, for which the machinery sued for was furnished, and that he so conducted as to give authority to the Jewells to obtain the same on his credit.
The defendant took a mortgage deed of the mill from the Jewells in June, 1849, and before the articles were furnished by plaintiffs. He was then in the relation of a mortgagee out of possession, to the mill property. As part of the *106 same transaction, a large lot of logs were mortgaged by tbe Jewells to the defendant and Dow & Co., and the defendant and Dow & Co. gave a power of attorney to the Jewells, authorizing them, "as their agents, to manufacture into boards, or other lumber, the logs mortgaged, and to dispose of the boards and lumber; they accounting to the principals for the net proceeds, after deducting all expenses and a commission to them for doing the business.”
It is evident that the Judge who presided was correct in his ruling that, by the terms of this paper, no authority or agency was created, which empowered the agents to make the purchase in question, on the credit of the principals therein named. It is clear that the only authority conferred had relation to the manufacture of the logs. There was no power to purchase mills, or to place gangs of saws therein, or to make contracts of any other character than such as were directly connected with the manufacture and sale of the logs and lumber, as therein specified. The power might be exercised properly in hiring men, mills and vessels, but not in purchasing fixtures, or in making improvements like those in the case before us.
The relation of the defendant, as mortgagee, does not, in itself, authorize the mortgager in possession to contract, as his agent, for permanent improvements or for essential additions to -the estate, so as to enable the party doing the work, or furnishing the- materials, to maintain an action directly against the mortgagee, without proof of any other fact than that disclosed by the deed of mortgage.
But the mortgagee may be thus liable, if the proof establishes such facts as show that the mortgager was expressly, or by fair implication, authorized to contract for such work on the credit of the mortgagee; or that he may properly be held for such contracts, by reason of prior authority or subsequent ratification.
The plaintiffs rely upon the statement of the accounts made by B. C. Bailey at the request of the defendant. In that .statement the charges for the plaintiffs’ work and materials *107 are Included, and, at tho bottom of the account stated, the amount remaining due, ($600,) is included in a list of unpaid bills. The legitimate effect of this evidence must depend upon the object of the investigation, as stated by the witnesses. If it was to ascertain how much was properly chargeable to tho defendant and others, in settlement of the agency created by the written power, and for the purpose of such final settlement, the evidence that this charge of the plaintiffs was inserted without objection would be, to a certain extent, important in fixing a liability on the defendant. The defendant, however, insists that the only object of tho statement was to ascertain how they had disposed of their property; and not for any settlement with Jewell & Co. This is the testimony of N. W. Bridge, one of the parties. It is stated by Mr. Bailey, (on cross-examination,) that the object was to ascertain what Jewell & Co. had done with the property. The testimony of Mr. Bailey, in chief, is to the effect that the parties both desired the investigation, to ascertain, as Mr. Jewell said, whether they had used any more money than they were authorized to use by the agreement. Mr. Bailey says he was requested to state an account, made up from all the mill accounts of Jewell & Co., and see how they stood.
It does not appear that this statement of accounts was ever used in making any settlement, or that the defendant ever recognized the items as legal charges against him.
There are certain items in the account stated, which could not be properly charged to the defendant in a settlement of the agency to manufacture. One is a charge of "$300, paid expenses dividing Flag Staff” (township). This clearly could not be a proper charge in the settlement of the accounts respecting the sawing and sale of the lumber. Another charge is for "cash ($600) paid for boiler sent to California.” This charge, without some connecting testimony, could not be within the agency.
Talcing the items as stated, tho testimony of the witnesses as to the object in employing Mr. Bailey to state the ac *108 count, — the fact that no use was made of it in settlement, we cannot think that any inference can be drawn therefrom legitimately, to charge the defendant in this suit. It would be drawing an inference from facts which do not in themselves warrant it, to say that by this statement made by Mr. Bailey the defendant acknowledged all the items therein as proper charges against him in a settlement of the agency. The testimony of Mr. Jewell (found among the written documents in the case) is corroborative of this view.
■ The plaintiffs rely upon certain admissions of the defendant by words and acts. It is urged that he and his administrator have paid certain bills incurred by the Jewells during the agency. This is admitted, but it is replied that these bills were all for work in and about the logs, and the manufacture thereof, and therefore properly paid by the principals. George Moulton, who put in a new boiler, says he called on defendant for pay, and he replied that he had nothing to do with it. And when told that the engine would be removed, still refused to pay for it, but said he would hire it. , This offer to hire, it is presumed, was after he' took" possession under his mortgage. This testimony rather negatives than establishes ap' agreement or understanding that he was to pay for the engine. This charge in its nature is similar to the one now in question.
The testimony of James Hinkley is also relied upon by plaintiffs. He says he worked for defendant for many years off and on; that he asked Mr. Henry why he put in the gang of saws, and he said it was to save cut of lumber; that it would save the expense of putting them in in a year.
It will be observed that the whole force of this testimony depends upon the use of the word "7¿e,” in the question put. The apparent object of the question was to ascertain why the gang was put in; not by whom put in. The witness seemed desirous to ascertain whether the saving from the use of the gang would equal the cost. The answer, as stated, refers to this point and gives as the reason, that it was to save cut of lumber. The change of a single word in the *109 question would alter the whole bearing of the interrogatory, on the point as to the person or party who put the gang of saws into the mill. If the question had been, " why was the gang put in?” — or, " what was the object in putting it in ?” and the answer had been as stated, the question and answer would have had no bearing upon the point now in controversy. If the question had been put as stated, the defendant might not have observed the form of it, as implying that he had put the saws in himself, as the substance of the question had relation to the use and profit of the gang of saws.
It is not to be overlooked, that the witness says that this conversation took place more than ten years before; that nothing has refreshed his recollection since that time ; that he don’t know that he has given the exact words of the conversation ; and, that he has never been called as a witness in the other similar cases against this defendant.
Considering all these points, we do not think that a jury would be justified in rendering a verdict upon the testimony of this witness alone, to charge the defendant upon a promise,’ implied from his admission of liability. And this seems to be the only part of the evidence which remains to be considered on this point, in the testimony offered by the plaintiff before he rested.
The defendant introduced the deposition of Stephen Jewell, and he testifies that he purchased these articles for the firm of S. Jewell & Co., and gave notes in payment, and that the gang of saws was put in by himself and partners. The plaintiff introduced several witnesses who testified to declarations of the deponent, at different times, more or less inconsistent with the statements in the deposition. We think that the jury might be influenced by these declarations to doubt or reject the testimony. At least, we may say that, if the case had rested on that deposition, we should not have felt bound to interfere, if the jury did disregard it.
But the testimony given, of declarations inconsistent with his present testimony, could only be considered as affecting *110 the credibility of the witness, and not as facts established by testimony. This distinction is highly important, but is not always regarded by a jury, by reason of a misapprehension of the rule. It is quite clear, that the declarations of an agent, after his agency has ceased, cannot be given in evidence, as testimony of facts to be considered by the jury in 'determining the weight of evidence, but may be heard by the jury, only as contradicting a witness and thus impeaching his credibility.
The result of this investigation is, that, there not having been any authority to contract this debt on the credit of the defendant, by reason of the written power of attorney, nor by the relation of mortgagee out of possession, the plaintiffs can only recover by proof of a direct or implied promise. The burden is on the plaintiffs to prove such direct promise, or such facts as would authorize a jury to infer or imply such promise. We do not think that there was sufficient evidence to authorize such finding, and therefore there must be a new trial. Motion sustained.

New trial granted.

The exception$ must be overruled. The Court did not err in permitting the power of attorney to be read, as it served to show a relation between the parties in reference to the lumber and business. The subsequent ruling stated the true construction of the paper plainly. If the defendant had any objection to the papers going to the jury, he should have called the attention.of the Judge to his objection at the time the papers were delivered to the jury. We do not mean to say that it was not properly delivered.
Appleton, 0. J., Cutting, Goodenow and Walton, JJ., concurred.