[Civ. No. 4478.  First Appellate District, Division Two.—February 21, 1924.]

## KLEIN-SIMPSON FRUIT CO. (a Corporation), Respondent, v. HUNT, HATCH & CO. (a Corporation), Appellant.

[1] LOANS—AGREEMENT OF PARTIES—FAILURE TO RETURN—OBLIGATION TO PAY CONVERSION.—A loan, as defined by sections 1884 and 1902 of the Civil Code, presupposes an agreement between the parties by which the borrower is to return either the same or a similar thing at a future time; and an obligation to pay for the thing borrowed if not returned within a certain time is no part of a loan, but is the subject of a special agreement; and in both cases an agreement of the parties is necessary and neither the loan nor the obligation to pay can rest upon a conversion by one who terms himself a borrower without the owner's consent.

[2] ID.—CONVERSION BY AGENT — EVIDENCE — CUSTOM.—In an action involving the taking of certain box shook belonging to plaintiff, a finding that defendant, through its agent, borrowed the shook is not supported by evidence showing that defendant's agent obtained the shook without the authority of defendant and without the knowledge or consent of plaintiff; and plaintiff's case is not strengthened by proof of a custom that, in cases of emergency, box materials might be borrowed by one shipper from another, to be returned during the season or paid for at the end of the season.

[3] ACCOUNT STATED—ESSENTIAL ELEMENTS—MERGER.—The essential element of a statement of an account is an agreement between the parties that the items contained therein are correct and a promise, either express or implied, on the part of the debtor to pay the amount thus found to be correct; and when an account is thus stated a new contract is created into which all prior negotiations are merged, and the creditor must recover upon the account as stated or not at all.

[4] ID.—IMPLIED ASSENT — SPECIFIC OBJECTIONS. — Where reliance is placed upon an implied assent that the items of an account are correct, such assent cannot be inferred from a specific objection or refusal to state the account.

[5] ID.—STATUTE OF LIMITATIONS—BARRED ACCOUNTS.—An open account already barred by the statute of limitations cannot be relieved from the bar of such statute by an oral statement of such account, but only by a writing signed by the party to be charged thereby.

65 Cal. App.—40

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Reversed.

The facts are stated in the opinion of the court.

Fred L. Dreher for Appellant.

George L. Stewart for Respondent.

NOURSE, J.—Plaintiff commenced this action on October 15, 1918, by filing a complaint setting forth two separate causes of action. The first cause of action is a simple cause for conversion. The complaint alleges that during the month of May, 1914, the defendant was operating a packing-house at the town of Los Mochis, state of Sinaloa, Mexico, and was engaged in the business of buying and packing tomatoes and shipping them to the markets of the United States; that one Bosworth was then the general agent in Mexico of the defendant; that plaintiff was then the owner of a certain quantity of wooden box materials designated as shook, stored at the town of Los Mochis, and in the safe-keeping, custody, and control of one Scally; that during said month of May, 1914, the defendant, through its agent Bosworth, knowing the relation between plaintiff and Scally, employed the latter to superintend the packing-house of said defendant in Los Mochis; that during said month of May the said Bosworth and Scally, acting as agents of the defendant, converted and appropriated to the use of defendant a quantity of said shook to plaintiff's damage in the sum of $1,232.94; that owing to a state of insurrection which then existed in the state of Sinaloa the said Scally was unable to communicate with plaintiff and the plaintiff remained in ignorance of the facts above stated until the month of October, 1916, and that upon learning of said conversion plaintiff immediately demanded of the defendant a return of like materials for the materials so taken and used, but the defendant refused to comply with this demand, and thereupon plaintiff demanded payment for the materials taken. The allegations in the second cause of action, in direct contrast with those of the first, are that Scally, while acting as agent for the defendant, as well as agent for the

plaintiff, loaned the shook in question to the defendant according to a local trade custom prevalent in that community by which local packers borrowed from others box material during the packing season, with the understanding that they would either return and restore like material to the lender within a reasonable time or pay the reasonable value thereof to the lender.   The other allegations of this cause of action are similar to those found in the first cause and need not be repeated.

The defendant interposed a demurrer to this complaint, setting up, among other things, the bar of the statute of limitations to both causes of action.   This demurrer was sustained and, within time, an amended complaint was filed. In this amended complaint the charge of conversion was abandoned and the first cause of action therein is similar to the second cause found in the original complaint except that the allegations relating to the local custom eliminated the element of reasonable time and set forth the custom as one calling upon the defendant to replace the materials "when it was able so to do," and that in the event that defendant failed to make return plaintiff, at its option, might charge the reasonable value thereof.   It was then alleged that owing to the state of rebellion existing in the territory and the consequent interruption of freight communication with the United States the defendant was able to return the shook in the month of December, 1916, but failed to do so.   (It is not alleged that the return could not have been made sooner.)   It was alleged that on account of defendant's failure to return the shook in December, 1916, plaintiff charged said materials to defendant's account in January, 1917, and thereupon demanded payment from the defendant.   As a second cause of action defendant alleged that on the eleventh day of January, 1917, the defendant "was and still is indebted" to the plaintiff in the sum sued for "on an account for goods, wares and merchandise . . . sold to defendant and to be paid for at San Francisco."   It is not alleged when the goods were sold or when the indebtedness accrued.   The third cause of action is based upon an account stated alleged to have been made in the month of September, 1916, at San Francisco, between plaintiff and defendant for the sum of $1,232.94. (It will be noted that in this cause of action the plaintiff

depends upon a statement of an account made in September, 1916, for the same item which in the previous causes of action the complaint alleged were charged to the defendant in January, 1917, the same date at which it was charged the defendant became indebted to the plaintiff. It should also be noted that in the original complaint it was alleged that plaintiff's first knowledge of the loss of the shook was on or about October, 1916; and that, in the amended complaint, it was alleged that the charge was made against defendant because of his failure to return the shook in December, 1916.) Defendant's demurrer to the amended complaint having been overruled, it filed its answer denying the allegations of the complaint relating to the loan of the shook in May, 1914, and specifically pleaded the statute of limitations to the three causes of action. The answer also denied that a charge for the materials was made against the defendant in January, 1917, that the defendant was indebted to the plaintiff in any sum in January, 1917, or at any other time, and in answer to the third cause of action specifically denied that in the month of September, 1916, or at any other time, an account was stated between the parties or that the defendant agreed to pay plaintiff any sum for the shook in question.

In findings directed specifically to the first cause of action the court found that in the month of May, 1914, defendant operated a packing-house at Los Mochis; that Bosworth was the general agent in Mexico for the defendant; that in the month of May plaintiff was the owner of the shook in question which *Bosworth* borrowed from plaintiff and which defendant used for its own purposes. It also found that during this time there existed at Los Mochis a custom by which packers borrowed box materials from each other, with the understanding that they should return or replace said loan when able to do so from supplies received from the United States and that, in the event of their inability to do so they should make a return in kind or the value of the same would be charged to the borrowing party. It also found that the defendant could have returned the shook to the plaintiff in the month of December, 1916; that it failed to do so, and that on January 11, 1917, plaintiff charged defendant's account the reasonable value thereof, amounting to $1,232.94. In findings directed specifically to the third

cause of action the court found that in the month of September, 1916, at San Francisco, a settlement of account was reached between plaintiff and defendant whereby defendant was charged with the sum of $1,232.94; and as the findings of fact appearing in the transcript are segregated and designated as covering the first cause of action and the third cause of action separately, and as no findings are shown to have been made covering the second cause of action, we assume that that cause was abandoned or that it at least was not carried into the judgment. Upon the findings above noted judgment was entered for $1,232.94, with interest from December 2, 1916, and from this judgment defendant appeals.

The facts of the case material to the opinion are that in May, 1914, Bosworth, acting as general agent for the appellant, employed Scally to take charge of appellant's interest in the packing of tomatoes in Los Mochis under an express authorization that, if the packing boxes left by Bosworth in appellant's packing-house were inadequate, Scally should purchase what was needed from the United Sugar Company, a corporation having box material in the same town. Scally took charge of appellant's interest, but he was not at any time during the period in question the agent or representative of the respondent. In fact, the respondent did not have any agent at Los Mochis during the time in question. This all appears from the testimony of Scally, who was called by the respondent. His testimony also shows that during the month of May, 1914, he found that he was short of boxes necessary for the season and, without any express authority from his employer and *without the knowledge or consent of the respondent,* he sent an employee to the Los Mochis Agricultural Union, where respondent had stored a quantity of shook, and obtained from the custodian thereof some of the respondent's materials, which were then made into boxes and used for the shipment of appellant's tomatoes. He did not notify the respondent that he had taken these materials until September, 1916, at which time he also sent a notice through the mail to Bosworth, who was not then an employee of the appellant. This notice was lost in transit. At the end of the packing season of 1914 Scally had made a complete report of his operations as agent of the appellant showing the purchase of a certain amount of shook from

the United Sugar Company, but not showing that any material had been acquired from the respondent. Soon thereafter he made claim upon Bosworth that he personally had furnished some shook which was used in the packing and shipment of appellant's tomatoes. This seems to have been the attitude of Scally for a period of about two years while negotiations were had between him and the appellant. The first direct knowledge which the appellant had of any claim outstanding for the use of shook used in May, 1914, at Los Mochis came to it through Scally in September, 1916. At that time, as in his conversation with Bosworth, he claimed that he personally had furnished the shook which was used by him at Los Mochis. At that time he filed a written statement of account of his services as agent for the appellant showing the moneys which he had received and paid out for appellant's account during the packing season of 1914. To this account was attached another reading: "Hunt, Hatch & Co. to J. P. Scally. Due settlement of box material loaned to be paid or returned, at warehouse at Los Mochis, Mex. Loaned during May, 1914. . . . '' In a letter accompanying this account Scally stated that *he* had furnished the shook in question and that he would like to have it returned to him in kind and requested that shipment be made to him so that it would reach him at Los Mochis by December 15, 1916.

As this claim was presented to the appellant by Scally at a time when he and the appellant were having some controversy over the settlement of their personal accounts, the appellant refused to approve the account and insisted upon Scally obtaining the approval of Bosworth before giving further consideration to it. Thereupon Scally approached Bosworth, requesting him to approve the account which he had presented to the appellant. Bosworth refused to approve Scally's claim because, as he said, he did not believe it was a just claim or that the shook had actually been delivered to the defendant, and the appellant so notified Scally. All these transactions were had between appellant and Scally upon the latter's representations that he had furnished the shook and that appellant was under obligation to either return the same to him or pay him the reasonable value. This was the condition of the controversy until February 14, 1918, when, for the first time, respondent herein

made claim upon the appellant for payment for the shook in question. The amount of this claim was $906.31. No evidence was offered to prove the correctness of this account, and it does not appear what was done about it or whether it was treated as an account stated. However, on August 10, 1918, another claim was made by the respondent in the sum of $1,232.94. Here again no attempt was made to prove the correctness of this account and, as was the case with the letter of February 14, 1918, it was not pleaded or treated as a statement of account between the parties.

From the statement of the facts it is apparent that Scally obtained the shook from the possession of respondent's custodian by conversion and not by a loan. It is shown in the pleadings, and appears from the evidence as well as from the briefs, that the materials were taken from the warehouse without respondent's knowledge or consent. [1] A loan as defined by sections 1884 and 1902 of the Civil Code presupposes an agreement between the parties by which the borrower is to return either the same or a similar thing at a future time. An obligation to pay for the thing borrowed if not returned within a certain time is no part of a loan, but is the subject of a special agreement. In both cases an agreement of the parties is necessary and neither the loan nor the obligation to pay can rest upon a conversion by one who terms himself a borrower without the owner's consent. All the facts appearing in the evidence go to prove the allegations of the original complaint that Scally converted the property without the knowledge or consent of the owner. [2] There is no evidence of any nature which sustains the finding that a loan was made. Some suggestion has been made in the briefs that Scally was the agent of both the respondent and appellant. The evidence does not support this position, but, even if it were so, it would not help respondent's case because, as agent for both parties, he would be presumed to have knowledge of the limits of his agency and it is not disputed that he was expressly authorized and directed to procure what shook he found necessary from parties other than the respondent. The finding of the trial court, therefore, that in the month of May, 1914, the appellant, through its agent Bosworth, borrowed and procured the shook from respondent is directly contrary to the evidence. All the evidence shows without conflict that Scally

obtained the materials without authority from his principal and without the knowledge or consent of the owner. There is no evidence of any nature tending to show that those materials were borrowed from the respondent and the respondent's position is not helped by the evidence relating to the local custom. This custom, as appears from the evidence, was that, in cases of emergency, box materials might be borrowed by one shipper from another, to be returned during the season or paid for at the end of the season. There is no evidence of any custom authorizing one shipper to take materials from the custody of another without his knowledge or consent. As to the first cause of action, therefore, it is apparent that respondent failed to make any proof of the essential allegations of a loan in accordance with the local custom.

The evidence relating to the third cause of action shows what purports to be an account stated between Scally personally and the appellant in the month of September, 1916. The appellant rejected the account and refused to consider it unless Scally would present the approval of Bosworth. Bosworth refused to approve the account and nothing further was done in regard thereto between September, 1916, and February, 1918, when the respondent herein addressed a letter to the appellant enclosing a claim for $906.31. This statement might have ripened into a statement of account between the parties if it had been supported by proof, but no attempt was made to do so. The same may be said as to the statement of account in the sum of $1,232.94, dated August 10, 1918. There is a marked difference between the three statements which were presented. The one presented by Scally personally in September, 1916, made no charge of any nature. It merely contained an itemized list of the quantity of pieces claimed to have been loaned. Neither the cost nor the value thereof was stated. The statement of February, 1918, in the total sum of $906.31, listed the materials furnished at one and one-half cents and one and one-fourth cents and added an additional claim of $123.90 to cover freight charges at the rate of fifty cents. The statement of August 10, 1918, charged the same quantity of material at the rate of two cents instead of at the rate of one and one-half and one and one-fourth cents and included the item of freight charges estimated at $.556 instead of at

the rate of fifty cents. It is quite evident, therefore, that even the respondent has not treated any one of these statements as a statement of account between the parties.

[3] The essential element of a statement of an account is an agreement between the parties that the items contained therein are correct and a promise, either express or implied, on the part of the debtor to pay the amount thus found to be correct. When an account is thus stated a new contract is created into which all prior negotiations are merged (*Gardner* v. *Watson,* 170 Cal. 570 [150 Pac. 994]), and the creditor must recover upon the account as stated or not at all. (*Duerr* v. *Sloan,* 40 Cal. App. 653, 655 [181 Pac. 407].) Here the respondent sued upon an account claimed to have been stated in September, 1916, and recovered judgment on a statement made in August, 1918, which was essentially different from the former account.

In addition to this the evidence is without conflict that the appellant did not at any time agree to the correctness of the account of September, 1916, but that at all times after its presentation had insisted that the account was incorrect and that it would give it no further consideration until Scally had obtained Bosworth's approval of the items of the account. [4] Where reliance is placed upon an implied assent that the items of an account are correct, such assent cannot be inferred from a specific objection or refusal to state the account. "An account stated presupposes an absolute acknowledgment or admission of a certain sum due, or an adjustment of accounts between the parties, the striking of a balance, and an assent express or implied to the correctness of the balance. If the acknowledgment or admission is qualified, and not absolute, or if there is but an admission that something is due, without specifying how much, there is no account stated; nor does an account stated exist if there is but a partial settlement of accounts, without arriving at a balance, or if there is a dissent from the balance as struck." (1 R. C. L., p. 211, sec. 9; 1 Cal. Jur., p. 195, sec. 52.)

Thus, where the party to whom an account was presented replied that he expected to receive funds at an early date and that he would then endeavor to adjust the account agreeably, it was held that no account was stated. (*Craig* v. *Lee,* 36 Cal. App. 335, 337 [171 Pac. 1089].)

[5] Finally, if we are to assume that the account of August 10, 1918, upon which the judgment was rendered was an account stated, it was barred by the statute of limitations. If any liability attached to the appellant it arose out of the conversion of the materials by Scally while acting as appellant's agent. The period of limitations to enforce such a liability expired before the respondent had presented any claim to the appellant. This feature of the case is controlled by the well-established rule found in *Auzerais* v. *Naglee*, 74 Cal. 60, 67 [15 Pac. 371, 373], where the court say: "An open account already barred by the statute of limitations cannot be relieved from the bar of such statute by an oral statement of such account, for the reason that under our code (Code Civ. Proc., sec. 360) no acknowledgment or promise is sufficient evidence of a new or continuing contract by which to take the case out of the operation of the statute, unless the same is contained in some writing signed by the party to be charged thereby."

Judgment reversed.

Sturtevant, J., and Langdon, P. J., concurred.