[No. 25054.   Department One.   July 31, 1934.]

H. C. Stinson, *Respondent*, v. Ivy S. Stallsmith, *Appellant.*[1]

*Attwood A. Kirby,* for appellant.

*Mulvihill & Anderson,* for respondent.

Mitchell, J.—Mrs. Ivy S. Stallsmith, *nee* Mooney, for nine years, including 1930, worked in an abstract office in the city of Walla Walla, during which time she owned and maintained a home for herself and her father in or near the city. She employed H. C. Stinson, a stranger, at his request, to make some small alterations or repairs to some of the buildings, and paint one of them. There was no express understand-

[1]Reported in 34 P. (2d) 1117.

ing as to what compensation he should receive. He stayed on the place more than a year, some four or five months of which time he worked for others than Mrs. Stallsmith, during all of which time he had his board and lodging at the home of Mrs. Stallsmith. There was no settlement between them.

On February 7, 1930, she wrote to him, as follows:

"Dear Mr. Stinson:  .  .  .

"Say Mr. Stinson, how would you like to have those two extra lots of mine over at the wee place? I paid $250 each, $500 for the two, besides interest, taxes and the trees, etc. I planted on them, and I'll give a clear deed and abstract, which will cost about $65, or more, if you will square my bill that way. I'm loosing a good deal at that, but it will be your gain. You can build a neat comfortable little house and dig a well, and by doing your own work, you can make some good money on it. If I were a man that is just what I'd do, I'd not sacrifice a good opportunity like that. Your work figured $423 and some odd cents, (counting your first small loans and the $35 you loaned me in Sept.) and not saying anything about the board, and then the twenty-five you loaned me this winter makes
$424
25

$449 We will call it $450. *I don't know what the board came to, but guess you do.*

*"Let me know what you think of it.*

"That would give you some work to do this spring wouldn't it?

"No, I haven't a box on the route all my own, get my mail with the Browns, as I'm not able to walk out after it, and they have to bring it to me anyway.

"You asked if the boys had begun a mission here. Yes, they started last Sunday. It would be nice if you could get to some of the meetings. Alfred McLeod and Howard Mooney are the two working here. I don't know any news, so will close for now.

"Sincerely,
"Ivy M."

The letter was received by him on February 11, 1930. He did not answer it.

Three years later, by summons and complaint filed February 8, 1933, he commenced this action upon an account stated against Mrs. Stallsmith, alleging that, just prior to February 11, 1930, she became indebted to him for labor performed and material furnished and for money loaned in the total sum of $450, and that on or about February 11, 1930,

" . . . there became and was an account stated, between the plaintiff and defendant, for the sum of $450.00, for which sum the said defendant thereby acknowledged herself indebted to plaintiff, and which sum should draw interest at the rate of six per cent per annum from February 11, 1930, until paid."

The defendant answered, denying the allegation of the complaint. Upon the trial of the case, a single finding was made that, prior to February 11, 1930, the plaintiff had an account against defendant, "and on or about the 11th day of February, 1930, said account became stated between the plaintiff and defendant for the sum of $450." Conclusions and judgment accordingly were entered. The defendant has appealed.

The authorities, as quoted by the respondent, defining an account stated, may be accepted as correct, as follows:

"An account stated is an agreed balance of accounts, whether that agreement be express or implied, . . ." *Merritt v. Meisenheimer,* 84 Wash. 174, 146 Pac. 370.

"An account stated presupposes an absolute acknowledgment or admission of a certain sum due, or an adjustment of accounts between the parties, the striking of a balance, and an assent express or implied to the correctness of the balance." 1 R. C. L. 211.

The letter does not measure up to the test. It does not contain any agreed balance of accounts, express

or implied; nor does it presuppose an absolute acknowledgment of a *certain sum due,* or an adjustment of accounts between the parties, the striking of a balance and an assent, express or implied, to the correctness of the balance.

Given a reasonable construction, under the facts and circumstances in the case, the letter means: (1) that there was some question about the amount due her for his board, that she did not know "what the board came to, but guess you do;" (2) that, in the current, open account between them, she states the item of her indebtedness to him for labor and material; (3) offers him no money whatever; and (4) asks him how he would like to take the two lots and square her "bill that way."

It was only an offer on her part to give property at a price fixed by her in settlement of an open account between them, whatever the amount of the board bill due her.

Nor is the letter equivalent to an "I owe ———— [writing into the blank space the name of the creditor]," as in the case of *Choy v. Sing,* 125 Wash. 631, 216 Pac. 888, cited by the respondent.

Nor does the evidence, with or without the letter, meet the test. Respondent contends, and it appears that the trial court agreed, that whether or not the letter is an account stated depends upon the question of whether plaintiff was required to pay board prior to the date of the letter. Accepting, without deciding, the correctness of that standard for judging, still the judgment is wrong.

Respondent and appellant were the only witnesses who testified at the trial. He was the plaintiff; the burden of proof was upon him. He testified that he was not to pay any board; she testified that he was to

pay board. If this were all the testimony on the subject, we would, of course, follow the trial judge in giving more weight to the testimony of plaintiff, as he had the advantage of hearing and seeing the witnesses as they testified. But such is not the case, as we view the record. Against her testimony, as affecting its weight, respondent calls attention to a statement in a later letter she wrote to him a few days before this suit was brought, saying:

"You had your board while you worked for me, and also boarded off me for several months while you worked for Mr. Hands, Mr. Hartsocks, Mrs. Thompson, Mrs. Chitwood, and numerous other people, and had the use of the telephone to get other work."

However, there is no statement or suggestion in the letter that the board was free. On the contrary, and as affecting the weight of his testimony, after admitting that he worked out considerable time for others while making her place his home, he further admitted, under cross-examination, as follows:

"Q. And it was understood then that you made your home there whether you were working or whether you weren't, is that true? A. Yes. Q. And regardless of the period of time? A. Yes, sir. Q. And you were to have your accommodations, your board and use of a place for your tools, and a place to do your work without paying anything for it, is that true? A. Yes."

Further, and going to the weight of his denial of obligation to pay anything for board, he testified, under cross-examination, as follows:

"Q. At the time this letter was written [the letter of February 7, 1930] you did owe her some money for board, it was understood between you and she? A. She cancelled that in the letter. Q. What did you mean by 'in this letter she cancelled that'? A. She said in the letter she didn't know how much."

As bearing upon the same matter, he also testified, under cross-examination: "I always accepted that letter as to what she owed me."

The trial in this court is *de novo*, and, upon consideration of all the evidence, we are impressed with the idea that it preponderates against the finding of the trial court. We are constrained to so hold, because (1) the burden of proof was upon the respondent; (2) categorically, each of the parties disputed the testimony of the other as to whether he was to pay board, either while working for her or for others; (3) her testimony was not weakened to any substantial degree by any fact or circumstance; (4) the apparent unreasonableness of his story that his contract with a stranger was that he should have accommodation at her home, as though it were his home, without paying anything whether he was working or not, and "regardless of the period of time;" and (5) his contradictory damaging claim or admission that, by her letter, the primary basis for this suit, she cancelled all that he owed her for board, because she said she did not know how much it was—an unwarranted assumption or conclusion as to the meaning of the letter, necessarily resulting in an implied admission that, but for the letter, there was liability for board.

Judgment reversed, with direction to dismiss the action.

BEALS, C. J., STEINERT, MILLARD, and MAIN, JJ., concur.