(Nos. 6324, 6337. April 19, 1937.)

DONALD W. TOLMIE, Appellant and Cross-Respondent, v. SAN DIEGO FRUIT AND PRODUCE COMPANY, a Corporation, Respondent and Cross-Appellant.

[68 Pac. (2d) 61.]

James W. Galloway and George Donart for Appellant and Cross-respondent.

Richards & Haga for Respondent and Cross-appellant.

634

BUDGE, J.—Appellant and cross-respondent Tolmie (hereinafter referred to as appellant), and respondent and cross-appellant San Diego Fruit & Produce Company (hereinafter referred to as respondent), in 1925 entered into and thereafter for approximately nine years engaged in a joint venture of dealing in, growing and marketing potatoes and peas in the states of Idaho and Washington. By the terms of their agreement appellant received a salary of $100 a month, later increased to $150 a month, to be paid as a part of the cost of the business of the joint venture, and the net profits were to be divided in the ratio of 75 per cent to respondent and 25 per cent to appellant.

The business of the joint venture was carried on until December 12, 1933, at which time agreements were made and entered into between the parties for a dissolution and winding up of the business and these agreements were ratified and confirmed.

Appellant's second amended complaint, upon which trial was had, alleged that an audit of the books, accounts and

records of the joint enterprise rendered to appellant erroneously and incorrectly included or excluded certain specific items to appellant's detriment. It was also alleged that appellant had kept full, true and correct accounts and records which could not be reconciled with the audit rendered to appellant, and it was prayed that appellant have a discovery and accounting of all the assets and profits of said joint venture.

At the trial of the cause the court heard evidence upon some of the specific items alleged to be incorrect and by its findings and judgment refused a general accounting, considered only the specific items upon which evidence had been submitted, excluding some and refusing to exclude other items which had been included, and including some and refusing to include other items asked to be included in the audit. Both parties appeal from the judgment.

Respondent's assignments of error I, II, III, and XIII, upon its cross-appeal, urge that the court erred in overruling respondent's demurrer to the second amended complaint, its motion for judgment on the pleadings, the objections to the introduction of any evidence by appellant and in adjudging and decreeing that respondent was liable to appellant in any sum whatsoever. Respondent's contention is that the Wansley audit, made pursuant to the dissolution agreements, hereinafter referred to, was absolutely binding upon *both* parties, being in the nature of an account stated. The following language from respondent's brief discloses its position:

"Whether strictly an account stated or an award or otherwise, it must be manifest and clear that the dissolution and settlement agreement and account stated pursuant thereto were the legal equivalent of such account or award. To open such a settlement obviously is only within the jurisdiction of a court of equity. A complaint to so reform or open a settlement must come within some well-established branch of equitable jurisdiction, that is to say, fraud, duress, or mistake."

Appellant on the other hand urges that the Wansley audit was not intended to be conclusive upon anyone, was not an

account stated or arbitration and award, but was merely intended to be used as a basis of settlement, either party having the right to question its correctness or completeness.

The dissolution agreements, Exhibits "A" and "B" to the second amended complaint, contain the following provisions with reference to the Wansley audit:

## "EXHIBIT 'A'

"In consideration of the premises and in consideration of this mutual determination and fixing of interests and agreement to dissolve and wind up the said business, it is mutually agreed as follows:

"Excepting for the purpose of liquidating and winding up the said business, the relations of the parties are hereby terminated.

"Company shall, with the assistance and aid of Tolmie and as the best interests of the parties hereto may appear, proceed to liquidate and wind up said business. . . . .

"The balance as shown by the books after a complete audit of the business and accounts thereof, shall be then and there settled pursuant to the terms of this agreement."

## "EXHIBIT 'B'

"The books, accounts and transactions of the business kept by or in the hands of, or under the control of either party, including all such final and winding up statements, accounts, or items not now made or entered, shall be audited by Certified Public Accountants, and a statement made by such accountants showing the correct financial standing of said business and to each other. The parties hereto agree that said final auditing and final statement by Certified Public Accountants *shall be the basis for the settlement of the business to be made between the parties.*" (Italics ours.)

An audit was prepared by the firm of Wansley, Crandall & Reuter, certified public accountants of San Diego, California, and a copy thereof submitted to appellant. The evidence discloses that appellant did not assent to or acknowledge the audit as being correct or as showing a correct balance, but immediately denied its correctness and completeness and instituted the instant suit at once.

■ It is well established that an account stated presupposes an absolute acknowledgment or admission of a certain sum due, or an adjustment of accounts between parties; the striking of a balance; and assent, express or implied, to the correctness of the balance. In other words the minds of the parties must meet. In *American Mutual Liability Ins. Co. v. Chicago-Los Angeles Building Corp.*, 88 Cal. App. 300, 263 Pac. 297, the rule is stated as follows:

"Our courts have uniformly held that: 'An account stated presupposes an absolute acknowledgment or admission of a certain sum due or adjustment of accounts between the parties, the striking of a balance, or an assent, express or implied, to the correctness of the balance. If the acknowledgment or admission is qualified and not absolute, or if there is but an admission that something is due without specifying how much, there is no account stated, nor does an account stated exist if there is but a partial settlement of accounts without arriving at a balance or if there is a dissent from the balance as struck.' 1 C. J., p. 695, par. 287; *Coffee v. Williams*, 103 Cal. 550, 556, 37 Pac. 504; *Craig v. Lee*, 36 Cal. App. 335, 171 Pac. 1089."

In 1 C. J., page 685, sec. 263, the rule is stated that:

"To constitute an account stated, the correctness of the balance must receive the assent, express or implied, of both parties, a certain fixed sum must be admitted by the one party to be due to the other, and where there are mutual or cross demands, the parties must come to an agreement as to the allowance or disallowance of the items composing the account; there must be an adjustment, a balance struck, and an assent to the correctness of the balance. For this purpose, it is said, there must be an examination by the parties of the accounts between them."

See also: *Gunn v. Perserverance Min. etc. Co.*, 23 Ida. 418, 130 Pac. 458; *Petrosino v. Wakefield*, 138 Cal. App. 336, 31 Pac. (2d) 1056; *Stinson v. Stallsmith*, 178 Wash. 383, 34 Pac. (2d) 1117; *Rogers v. Burnham*, 140 Cal. App. 336, 35 Pac. (2d) 329; *Hansen v. Fresno Jersey Farm Dairy Co.*, 220 Cal. 402, 31 Pac. (2d) 359; *Klein-Simpson Fruit Co. v. Hunt, Hatch & Co.*, 65 Cal. App. 625, 225 Pac. 14;

*Ough v. Ansonia Oil Co.,* 99 Cal. App. 769, 279 Pac. 481; *Masters v. Walker,* 99 Or. 299, 195 Pac. 381.

An action on an account stated is not founded upon the original items, but upon the balance *agreed* to between the parties. (*Davidson Grocery Co. v. Johnston,* 24 Ida. 336, 133 Pac. 929, Ann. Cas. 1915C, 1129.)

The record discloses beyond doubt that appellant did not acknowledge or admit the correctness or the completeness of the audit after it was submitted to him, and the same may be said of respondent since it alleged in its pleadings that certain items were not included in the audit. The question then is whether or not appellant and respondent bound themselves by the dissolution agreements to accept the audit and agreed that it should not be subject to question or criticism. The agreements for dissolution provide that the books, accounts and transactions of the joint venture "shall be audited by Certified Public Accountants" and that "said final auditing and final statement . . . . *shall be the basis for the settlement* of the business *to be made* between the parties." "Basis" is defined in Funk & Wagnalls New Standard Dictionary as: "That on which anything rests, the fundamental principle; groundwork; support; foundation." In 7 C. J. 933 "basis" is defined as: "the foundation or groundwork of anything; that upon which anything may rest, or the principal component parts of a thing." At no place in the dissolution agreements was it agreed that the audit to be rendered was to be conclusive upon the parties, but only that it was to be the "basis" for the settlement "to be made." The language used, "shall be the basis for the settlement . . . . *to be made* between the parties," indicates an intention that settlement was to be by an agreement to be reached by the parties subsequent to the rendition of the audit. It has been held that where a third person is selected to make a statement of the accounts between the parties, his report does not constitute an account stated, in the absence of an agreement that the result shall be the final settlement. (1 C. J. 703, sec. 318; *Tompkins v. Gerry,* 52 Ill. App. 592; *Whitehead v. Darling,* (Ky.) 5 S. W. 356; *Reed v. Harris,* 37 Tex. 167; *Holmes v. Morse,* 50 Me. 102.)

■ Clearly the audit does not constitute an arbitration and award as provided for by title 13, chapter 9, I. C. A. (5 C. J., p. 21, sec. 9 and p. 22, sec. 13.)

■ While it would appear that it must be concluded that the audit and the dissolution agreements do not constitute an account stated or an arbitration and award, a further rule relating to complicated accounts and numerous errors appears to be worthy of mention, that is, even in cases where an account stated exists, and the account is shown to contain errors of considerable extent in number and amount, or which extend over a long period of years, the account will be opened, justice requiring a restatement of the account. The rule is stated in 1 C. J. 721, secs. 373, 374, as follows:

"where accounts which are impeached as erroneous are shown to contain errors of considerable extent in number and amount, or which extend over a long period of years, the accounts will be opened whether the errors were caused by mistake or by fraud, and the party will not be confined merely to surcharging and falsifying. But in such case the errors must be shown to be so numerous that justice cannot be done without restating the account."

The record discloses that the accounts audited involved numerous deals or separate marketing agreements extending over a period of some nine years. By the allegations of his second amended complaint appellant set forth specifically some sixteen or more items contained in the Wansley audit which were alleged to be incorrect. At least five of these items were held to be incorrect by the trial court, and were as follows:

Items charged in the Wansley audit as a debit to the joint venture, but improperly included as a debit against the joint venture:

Interest on account of money advanced joint
 venture ................................ $15,346.17
Curran Dyer Deal, not a part of joint venture.... 23,334.98
Payette Lakes House, not a part of joint venture.. 9,179.42
Store at Los Angeles, not a part of joint venture.. 2,547.42

Profit which should have been included as a credit to the joint venture, but not credited:

Currey deal.................................... $4,756.54

Total ........................................55,164.53

Thus according to the lower court's findings there were errors or inaccuracies in appellant Tolmie's favor in the items that should not have been charged against the joint venture and in the item that should have been credited to the joint venture of at least $55,164.53. Not only did appellant allege and the court find inaccuracies to the extent of $55,-164.53 to exist in the audit, but respondent by cross-complaint alleged:

"Said audit and statement is correct and sets forth correctly the relations of these parties to said business and to each other, *except in the following respects,* to wit:"

Respondent then sets forth three items: Losses incurred in connection with the sale of certain potatoes—$1,739.41; losses incurred in the Hogue deal—$1,837.87; and Income Tax—$4,092.95, which items it alleges should have been charged against the business of the joint venture. In other words respondent itself alleges errors in the audit to the extent of $7,670.23. Under such circumstances, namely, where the accounts are complicated, extend over a period of nine years, and there are errors alleged and found of considerable extent in number and amount, and where all parties allege that the audit is erroneous, certainly justice might well require the restating of the account. We are not constrained to hold that the court erred in its refusal to treat the audit as an account stated or as an arbitration and award.

At least six of appellant's assignments of error relate to appellant's contention to a right to a general accounting and to the action of the court in refusing the same. Appellant assigns as error the making and entering of a portion of finding of fact number 16, hereafter quoted; that the judgment is against law in that the books of account of the joint venture, offered to show that the audit did not show the true account, were excluded from evidence; in refusing to admit and in excluding evidence consisting of books of account, offered for the purpose of proving the incorrectness

of the audit and that the actual profits were greatly in excess of those shown by the audit; and in denying appellant's offer of proof that the audit was incorrect in the amount of approximately $5,727.07.

While the cause went to trial on the second amended complaint, the original and the first amended complaint were admitted in evidence. The original complaint sets forth a cause of action seeking an accounting. By leave of the court a first amended complaint was filed which seeks a money judgment. To the first amended complaint respondent interposed a demurrer reciting in part that:

"1. It cannot be determined therefrom whether it is an action in equity for an accounting and settlement between joint venturers or partners after dissolution, or an action at law for a money judgment after a dissolution, accounting and settlement between partners or joint venturers.

"2. There is no relation between the relief asked for and the allegations of the complaint, the relief asked for being a money judgment at law, and the facts alleged being a dissolution of a partnership or joint venture with no accounting and settlement alleged upon which a money judgment for Plaintiff could be based."

The lower court being of the opinion that an accounting was appellant's proper remedy the demurrer was sustained and appellant then filed the second amended complaint alleging therein that pursuant to the dissolution agreements an audit was made and a copy furnished appellant. Appellant then alleges that the audit is erroneous and incorrect, specifically setting forth several items which should or should not have been included. Paragraph XXI then alleges errors or inaccuracies in the audit which cannot be specifically accounted for, as follows:

"That the plaintiff has, at all times, kept a full, true and correct set of books and accounts, correctly showing the profits and losses upon all deals and transactions and items in which the plaintiff and the defendant were jointly interested as a part of their joint venture;

"That it is impossible to reconcile the Wansley audit, so obtained by the defendant, with the balance and items

shown by the books of account so kept by the plaintiff in that the net profits of said joint enterprise as shown by the plaintiff's books amount to the sum of $187,636.72, while the net profits as shown by the Wansley audit amount to $52,942.76, disclosing a difference of $134,693.96 and it is impossible for the plaintiff to determine from said audit the exact nature of the causes of the inaccuracies therein and the reasons for the discrepancies in the account between the plaintiff and the defendant as reflected by said audit and as disclosed by the plaintiff's books;

"That the plaintiff have a discovery and accounting against the plaintiff by the defendant or proper credits have been withheld, and by reason thereof it is impossible for the parties hereto to make a full and complete settlement of their accounts from the items so contained in said audit, and by reason thereof the plaintiff is entitled to have and receive of the defendant a full and complete accounting of the profits and losses of the transactions so constituting said joint enterprise;"

It is then alleged that a demand for an accounting has been made and refused. The prayer of appellant's second amended complaint recites the following:

"That the plaintiff have a discovery and accounting against the defendant of all of the assets and profits of said joint enterprise so conducted by the plaintiff and the defendant;"

At the trial the court confined appellant to evidence with relation to the items of error or inaccuracy specifically pointed out in the pleadings; refused to permit the introduction of the books of account or any evidence to show discrepancy, error or inaccuracy in the audit except as to the items specifically set out. The court refused to permit evidence offered to prove the allegations recited in paragraph XXI heretofore quoted, and also refused appellant's offer of proof with respect to such allegations. In the findings of fact the court stated:

"That plaintiff made no objection to such audit and account excepting only as to the propriety of certain items hereinafter mentioned . . . ."

There appears to be no basis for this finding. Appellant did not admit the correctness or the completeness of the

audit in whole or in part. In the allegations in paragraph XXI discrepancies in the total amount as between the Wansley audit and appellant's calculation of the account, impossible of determination as to nature or cause, were specifically alleged, a discovery and accounting of all assets and profits of the joint venture was sought and evidence was offered and an offer of proof made, all for the purpose of proving the allegations made. As heretofore recited, the audit did not amount to an account stated, and can be said to be nothing more than an audit, not accepted in its entirety or in part by appellant, and not accepted in its entirety by respondent.

The rule is well settled that parties engaged in a joint venture are entitled to an accounting in equity at the termination thereof. (*Hauret v. Pedelaborde,* 77 Cal. App. 187, 246 Pac. 134; *Peardon et al. v. White,* 65 Cal. App. 463, 224 Pac. 263; *Bedolla v. Williams,* 15 Cal. App. 738, 115 Pac. 747; 14 Cal. Jur., sec. 7, p. 765; 1 C. J. 613, 621.)

Likewise in an accounting between joint venturers the books of account (offered in evidence herein but not admitted) of the enterprise kept by one party are admissible in evidence. (47 C. J. 1248; *Cobb v. Martin,* 32 Okl. 588, 123 Pac. 422; *Morris v. Haas,* 54 Neb. 579, 74 N. W. 828; *McKleroy v. Musgrove,* 203 Ala. 603, 84 So. 280; *Darlington v. Perry,* 354 Ill. 22, 187 N. E. 796.)

It appears from the record that there were matters before the court and evidence introduced tending to disclose the reason why alleged errors, inaccuracies or discrepancies in the Wansley audit could not be specifically pointed out by appellant. The Wansley audit, admitted in evidence for a limited purpose only, that is for identification, appears to be a brief summary of the business of the joint venture and recites on page two the following:

"We examined, compared and reconciled the accounts of the joint venture as kept by each of the Joint Venturers and have prepared adjustments for each set of books so that they may be made to reflect our findings as shown herein. Our examination was conducted as follows: . . . .

"(2) Items appearing on one set of records but not on the other set were audited and allowed or disallowed in accordance with our best judgment, . . . . "

An accountant called as a witness for appellant testified in part with relation to the Wansley audit as follows:

"Well, it includes in its final statements items which do not purport to be made from any books of record or account, and whose insertion in the statement are entirely a matter of the conclusion of the auditor.

"Q. And is that a conclusion based upon the examination of any books which the auditor claims to have examined?
. . . .

"A. No.

" . . . . The audit is not complete in that it makes it unduly difficult to identify alleged adjustments to the books—that the adjustments are not set out in sufficient detail to constitute an audit."

It would appear from the foregoing that appellant's allegation that it is impossible to determine from the Wansley audit the exact nature of the causes of the inaccuracies and the reasons for the discrepancies in the account as reflected by the audit and as disclosed by appellant's books, was at least to some degree borne out by the record. From an examination of the record and the pleadings it would appear that the court was in error in its finding that appellant complained only of the specific errors set out in the complaint and made no other objection to the audit, and that the court was in error in confining appellant to evidence relating only to specific items of error or inaccuracy as set forth in the second amended complaint.

It appears to be proper to consider and pass upon the assignments of error relating to the court's findings and judgment with relation to those specific items upon which evidence was adduced and upon which the court found.

Respondent assigns as error the making and entering of conclusion of law II(a) which was to the effect that the item of $15,346.17, interest charged appellant by respondent for moneys advanced for the operation of the joint venture, was improperly allowed. Respondent urges that the conclusion is not supported by any finding and is contrary to the evidence and contrary to law. Finding of fact numbered XVI(a) recites as follows:

"Interest: Item of $15,346.17 charged in said audit and account and as a debit to the joint venture on account of interest on money advanced by defendant to the joint venture, . . . . the Court finds that the defendant did from time to time advance for the use and benefit of the joint venture certain sums of money which it was understood by the parties was to be repaid to said defendant, but there was no agreement between the parties as to whether or not defendant should have interest on money so advanced."

There were allegations in the second amended complaint that respondent agreed to furnish all money necessary for said enterprise, which allegations are supported by the evidence, a portion of appellant's testimony being as follows:

" . . . . he (Mr. Springstead, representative of respondent) asked me if I would agree to go ahead with the business and include the growing and loading of peas, both green and seed, without any definite period of time stated for the agreement, which I agreed,"

"I was to draw $100.00 a month, and in addition I was to share 25 per cent in the profits or losses of the venture. . . . . My duties would embody any operation, and management of any business necessary for the growing and shipping of potatoes, peas, or pea seed, or potato seed. This would embody—this did embody the renting of land, the purchase of land, construction of warehouses, and operation of warehouses.

"Q. (By Mr. DONART.) And what was said there as to who should furnish the money to carry on this enterprise?

"A. The agreement—Mr. Springstead said that the San Diego Fruit and Produce Company would furnish the necessary capital for the enterprise."

Particularly where one party contributes money and the other labor and services, one joint venturer is not entitled to interest on his contribution of capital to the venture in the absence of an agreement entitling him to make such charge. The rule is stated in *Clement v. Duncan*, 191 Cal. 209, 215 Pac. 1025, as follows:

"The settled rule is stated as follows in *Tirell v. Jones*, 39 Cal. 655, quoting the syllabus: 'In a contract between two parties, in which it is conditioned that one shall advance

the necessary funds in the execution of the contract, and the other his services, skill and experience, and that each shall receive an equal portion of the profits, the party advancing the money is not entitled to interest on the same in the absence of any agreement that he should receive interest.' See, also, *Carpenter v. Hathaway,* 87 Cal. 434, 435, 25 Pac. 549, *Price v. Olcovich,* 142 Cal. 47, 75 Pac. 568, and *Moore v. Westbrook,* 156 N. C. 482, 72 S. E. 842, Ann. Cas. 1913A, p. 173.''

See also: 47 C. J. 777, 778; *Carpenter v. Hathaway,* 87 Cal. 434, 25 Pac. 549; *Tirrell v. Jones,* 39 Cal. 655; *Ice v. Kilworth,* 84 Kan. 458, 114 Pac. 857, 35 L. R. A., N. S., 220; *Morgan v. Child, Cole & Co.,* 47 Utah, 417, 155 Pac. 451; and see *Riebel v. Mueller,* 177 Minn. 602, 225 N. W. 924, 66 A. L. R. 1, and cases cited in note, page 3, 66 A. L. R. There was no error in the court's action in refusing to allow this interest item to respondent.

Respondent also assigns as error the court's action in excluding the following items and permitting the same to swell the assets of the joint venture, namely, Curran Dyer deal, $23,224.98; Payette Lakes House, $9,179.42; Store at Los Angeles, $2,547.42; and in including and adding to the assets of the joint venture the sum of $4,756.54, profit from the Currey deal. We see no present reason for disturbing these findings as there is sufficient competent evidence to support them.

It may be said in passing that the foregoing items amount to a total of $55,164.53 additional credits to the assets of the joint venture. A computation of appellant's 25 per cent thereof, which, according to the findings and in conformity with the dissolution agreements, appellant was entitled to, results in the sum of $13,791.13. While the lower court found that appellant was indebted to the joint venture in the sum of $7,889.93, there is no evidence in the record upon which such a finding could be based. While it was stipulated by the parties in plaintiff's exhibit ''4,'' the Wansley audit, that:

''the audit and statement attached hereto, made by Messrs. Walmsley, Crandall and Reuter, Certified Public Accountants, *is a true, correct and complete copy of the audit* and

statement referred to in the complaint . . . . '' (Italics ours.) it was not stipulated that the audit was correct in any part nor that the audit, of which the exhibit is a copy, showed the true or correct status of the account between appellant and respondent. The purpose of the stipulation appears clearly to have been that of permitting the introduction of the copy, and in effect is a certification that the exhibit is a true copy of the original instrument. The only apparent source of the court's finding of the amount due from appellant is from this copy of the Wansley audit which was admitted by the court for a limited purpose only, the court stating:

"my idea is that the offer (Wansley audit) is limited to the idea that this is a copy of the audit which is referred to in your pleadings, and that it is merely limited for purposes of identification, *and not to prove the correctness of the items shown in the audit.* As I understand, there are thirty or forty references in this record to the audit, and this is merely to complete the record." (Italics ours.)

The foregoing being true there was no evidence in the record showing that appellant was indebted to the joint venture in any amount. We do not mean to be understood as holding that appellant is not indebted to the joint venture, nor that such question cannot be considered upon a general accounting, but rather that in this case the record is silent with relation to appellant's indebtedness to the joint venture.

 Appellant assigned as error the findings of the court allowing respondent the recovery of $31,809.86, charged in the audit as a part of the overhead and operating costs of respondent's business in San Diego, and urges further that there is no evidence in the record showing that the sum of $31,809.86 or any other sum was ever expended by respondent as a part of its overhead expense in operating the sales agency at San Diego, or that said sum or any other sum would be the proportionate amount of said expense to be charged against the joint venture. Without passing upon the propriety of a charge for overhead and operating expense of respondent's office and business in San Diego, it appears again that there is no evidence with relation to the correctness of the amount. The audit was not admitted to be correct as

to this specific amount, and the limitation upon the admission in evidence of the audit—"not to prove the correctness of the items shown in the audit"—leaves the finding that the sum of $31,809.86 was expended by respondent, and the conclusion that it was a proper charge, entirely without foundation in the record.

In *Reid v. Keator,* 55 Ida. 172, 39 Pac. (2d) 926, in the course of the opinion it is said:

"That parties to a joint enterprise, like copartners, occupy fiduciary relations to each other, has been uniformly held by the courts.

"The relation between parties to a joint adventure is fiduciary in its character, and requires the utmost good faith in all the dealings of the parties with each other."

In harmony with the above stated rule and applying the rule to the facts in the instant case, in order that justice be done to both parties, a complete accounting should be had as to each and every deal. We are therefore constrained to hold that the judgment should be reversed and the cause remanded and it is so ordered.

Costs to be equally divided.

Morgan, C. J., and Holden, Ailshie and Givens, JJ., concur.

ON PETITION FOR REHEARING.

(May 27, 1937.)

BUDGE, J.—Upon petition for rehearing it is argued that the court erred in holding and deciding that the audit "was to be the basis of settlement between the parties and yet in effect holding that it was not the basis for anything;"

For the purpose of clarification we make the following statement of the purport and intent of the opinion:

That the audit was intended to be, and may be, used as a basis of settlement between the parties, either party having the right to question its correctness or completeness, since it was not an account stated and not binding upon the parties; that the parties may by mutual agreement or stipulation adopt as correct such portions of the audit as they may desire; and, that the parties are entitled to an accounting with

relation to any and all matters or deals not mutually agreed upon as being correct and not specifically disposed of in the opinion.

We do not think the holding of the court with reference to interest needs further clarification.

Morgan, C. J., and Ailshie and Givens, JJ., concur.